JOHN C. PETERSEN, JR., APPELLEE, V. O. J. HITCHCOCK, ADMINISTRATOR, APPELLANT.

FILED FEBRUARY 14, 1935. No. 29149.

*George H. Risser* and *R. O. Johnson,* for appellant.

*Henry J. Beal* and *Max G. Towle, contra.*

Heard before ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and THOMSEN, District Judge.

GOOD, J.

This is an action for specific performance of an alleged

oral contract between plaintiff and James Japson, now deceased, wherein Japson agreed to make a will giving to plaintiff all of his property of which he might die possessed. Hitchcock, as administrator of the estate of Japson, is the sole defendant.

The following is the substance of the oral contract declared upon: That in 1904 Japson was living in Havelock, Nebraska, and plaintiff was living in Plattsmouth, Nebraska; that Japson agreed that, if plaintiff would come to Havelock, take care of Japson and help him in his business affairs and live at Havelock with him, he, Japson, would will to plaintiff all of his property upon his death; that, pursuant to such promise and relying thereon, plaintiff moved to Havelock, Nebraska, in 1904, and lived there continuously until 1911. It is further alleged that during that time plaintiff looked after Japson, assisted him in his business affairs, taking care of him when he was sick and injured, and fully complied with plaintiff's part of the contract.

The answer admitted the death of Japson intestate and that defendant was duly appointed and qualified as administrator of Japson's estate, and denied the other allegations of the petition. Trial to the court resulted in a decree for plaintiff. Defendant has appealed.

Plaintiff contends that the defendant, as administrator, has no right of appeal, on the theory that the order is one for a final distribution of decedent's estate. Plaintiff overlooks the fact that this is not a proceeding in the county court for the distribution of decedent's estate, but is a claim asserted by him against the estate. The administrator represents not only the heirs, if any, but the creditors of the estate, and is charged with its preservation against any unjust claims. The fact that plaintiff makes the administrator sole defendant shows that he regarded defendant as authorized to represent and defend the estate. It would indeed be a strange thing that the estate which defendant represents could be bound by the decree, and that defendant was a proper person against whom the

decree should run, and yet he could not appeal from an adverse decision.

In *Packer v. Overton,* 200 Ia. 620, it was said (p. 622): "An executor or administrator acts in a representative capacity. By fiction of identity he is the person of the testator, and it is to him that all interested parties must look. He is charged with the duty of resisting unfounded claims, and to see to it that there is no improper diversion of funds or property in his hands. *Briggs v. Walker,* 171 U. S. 466, 43 L. Ed. 243. He represents all parties and all interests in the estate. *Leighton v. Leighton,* 193 Ia. 1299. For this reason he was made the party defendant in the instant case, and he is the only party who could appeal and preserve rights, if any, adversely affected by the judgment." Among other authorities holding to a like view are the following: *McKenney v. Minahan,* 119 Wis. 651; *Agnew v. Agnew,* 52 S. Dak. 472; *In re Estate of Heydenfeldt,* 117 Cal. 551; *Marion County Court v. Wilson* 105 Ky. 302; 3 C. J. 627.

Before taking up a discussion of the facts, we think it proper to say that it is very doubtful whether the contract alleged is sufficiently definite, in its terms, to constitute a valid agreement, if made. Plaintiff was to go to Havelock, take care of Japson, help him with his business affairs, and live with him at Havelock. What work was he to do in taking care of Japson? What was he to do in helping him in his business affairs? How long was he to live with him? How long was he to take care of and render service to Japson? Was it for a day, a week, a month, a year, or during the life of Japson? We are left in doubt. However, in view of the conclusion hereinafter reached on another proposition, we find it unnecessary to pass upon the question of whether the contract is sufficiently definite to be the basis of an action.

In general, the facts disclosed by the record may be summarized thus: Japson was a native of Denmark. He came to this country in 1880 and to Plattsmouth, Nebraska, in 1885, where he was employed in the shops of

the Burlington Railroad Company. Soon after his arrival in Plattsmouth he became acquainted with one Petersen, father of the plaintiff, who was also a Dane. Apparently, Japson was on very friendly and intimate terms with the Petersen family. He seems to have been very fond of the Petersen children, of whom there were four, and often referred to them as his "kids," or his children. He was later transferred from the Burlington shops in Plattsmouth to the Burlington shops in Havelock, Nebraska. When his transfer was effected is not clear. One of plaintiff's witnesses testified that it was in 1892, while plaintiff testified that it was in the late '90's or possibly in 1900. When asked how he fixed the time, plaintiff stated that Japson, together with plaintiff's father, mother and sister, attended the World's Fair in Chicago in 1893, and he knew it was some years after that time. Later he testified that he was born in 1887, and that his mother died seven weeks afterwards.

There were a number of witnesses for plaintiff who testified to conversations with Japson in which he stated, in substance, that he had no relatives or intimate friends, other than plaintiff, and that whatever property he might have at his death would go to plaintiff. One of plaintiff's witnesses testified that subsequent to the time of the alleged agreement Japson several times stated that he would leave his property to the Petersen children, without designating any one of them. But two witnesses approached the subject of proving an actual contract. One, a sister of plaintiff, testified, in substance, that in 1904, at their home in Plattsmouth, Mr. Japson requested plaintiff to move to Havelock; that Japson said he would like to have "Charlie" (plaintiff) come to Havelock; that he would not be sorry; that he would make it right with Charlie; that he would see that Charlie was taken care of when he was gone; that he would leave his estate or his money to Charlie; that he would make a will and it would be in Charlie's favor. Witness Hermanson testified that Japson took his meals at his mother's home in Havelock, and that on one

occasion he had a conversation with Mr. Japson in which the latter stated, in response to a question as to what he was going to do with his money or property, that he (Japson) had asked Charlie "if he wouldn't come down to Havelock;" that he "wanted someone to associate with," and help him; that Charlie finally went to Havelock "on the promise that Mr. Japson would take care of him if he came to Havelock." Witness asked Mr. Japson if he had made a will and he said "No." Witness stated to him: "Well, it would simplify matters a lot if you had," to which Japson replied: "Well, Ed, I will tell you what we will do, you go back to law school and when you get out of school I will have you make out my will for me." Witness was then asked: "Did he say who he was going to make the beneficiary in that will?" and answered "Charlie Petersen."

Without so deciding, let us assume that the evidence is sufficient to establish the making of the contract as alleged; still, plaintiff may not recover unless he has proved substantial performance upon his part. The record discloses that plaintiff left his home in Plattsmouth and went to Havelock, and worked in the Burlington shops from some time in December, 1904, until the spring of 1911. During no part of this period does it appear that plaintiff lived with Japson, and there is no competent evidence that he performed any service for him except to be frequently in his company. There is no proof that he assisted Japson in his business, or that he took care of him, save one answer of the plaintiff when he was asked where he (plaintiff) roomed or stayed after Japson had suffered an injury. To this question he answered: "I went over and took care of Mr. Japson, helped him." The answer was not responsive to the question, and motion was made to strike it out. The motion was overruled. We think it should have been sustained.

In *Kofka v. Rosicky,* 41 Neb. 328, it was held: "Specific performance of a parol contract will be enforced by a court of equity, where one party has wholly and the other

party partly performed it, and its nonfulfilment on the one hand would amount to a fraud on the party who has fully performed it." This rule was reannounced in *Damkroeger v. James*, 95 Neb. 784. See, also, *Hespin v. Wendeln*, 85 Neb. 172; *Harrison v. Harrison*, 80 Neb. 103.

In the case of *Peterson v. Bauer*, 83 Neb. 405, this court held: "An oral contract to adopt the daughter of a stranger and leave her property by will may be enforced by specific performance, where she has fully performed her part and established the agreement by clear and satisfactory evidence."

In *Powers v. Norton*, 103 Neb. 761, this court held: "An action for the specific performance of an oral contract for the conveyance of land will not lie, unless the proof is clear, satisfactory and unequivocal that the contract was made and substantially performed by the party seeking its enforcement."

In *Davis v. Murphy*, 105 Neb. 839, it was held: "A parol contract is enforceable in a court of equity when one party has wholly performed his part and the other has not performed his part, when it clearly appears that nonfulfilment would work a fraud upon the party who has fully performed." To the same effect is the opinion in *Nielson v. Kammerer, ante*, p. 57.

In 25 R. C. L. 310, sec. 124, speaking of contracts like that under consideration, it is said: "The evidence to sustain such an agreement must in all particulars be clear, positive, and convincing, and the performance relied on as the basis of the desired relief must likewise be proved by clear and sufficient evidence."

From a careful scrutiny of the entire record, we are convinced that it fails to show substantial performance of the contract on the part of the plaintiff, and without such substantial performance the court will not grant specific performance of the alleged contract.

The judgment of the district court is therefore reversed, and the action dismissed.

REVERSED AND DISMISSED.

PAINE, J., dissents.