LINCOLN NATIONAL BANK & TRUST COMPANY ET AL., APPELLEES, V. HARRY K. GRAINGER ET AL., APPELLANTS: LOUISE HITE GRAINGER ET AL., APPELLEES.

FILED JULY 12, 1935. No. 29308.

*Field, Ricketts & Ricketts* and *Flansburg, Lee & Sheldahl,* for appellants.

*Burkett, Wilson & Van Kirk, Good, Good & Kirkpatrick, W. A. Selleck* and *Mark Simons, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

GOOD, J.

This action was begun by the surviving testamentary trustees under the will of Harry B. Grainger, deceased, to obtain a declaratory judgment, construing a certain paragraph of the will, to enable them to make proper distribution of trust funds committed to their custody by the terms of the will. All of the devisees and legatees who are or may be entitled to participate in the trust funds were made parties defendant. All claimants came into court and filed pleadings, setting forth their diverse contentions. The action has become, in fact, one of interpleader, since the trustees, being mere stakeholders, have no interest other than to deliver the trust funds to the persons lawfully entitled thereto.

The controversy arises over the construction of subparagraph (d) of paragraph 7 of the will (hereinafter referred to as 7d), which, so far as material to this controversy, reads: "Upon the termination of this trust of the residue of my estate, as hereinbefore provided, the entire amount of such residue * * * shall be divided among such of my children as may then be surviving, together with issue of

such of my children as may have died prior to the happening of that event *per stirpes* and not *per capita*."

The will was executed May 25, 1923. It was drawn by an able and eminent attorney. After it was drawn, it was left in the possession of Mr. Grainger, and he, together with his brother Joseph and a business friend—an investment banker—spent about two days in going over and discussing the provisions of the will. Thereafter, the attorney was called in and he spent the larger part of two days in discussing and going over the matter with testator, the latter's brother and the banker friend before the will was executed. It thus appears that the will was drafted with a great deal of care and executed after deliberate and careful consideration thereof. The will is a lengthy document and disposes of an estate valued at more than a million and a half dollars.

At the time the will was executed, testator had a wife and four living children and three grandsons by a deceased son. The grandsons were then and now are minors. The will placed the residue of testator's estate in the possession of the trustees, to continue through the life of his widow or until the youngest of his children should attain the age of 30 years, whichever should be the later event. His widow has since departed this life, and the youngest of his children has attained the age of 30 years. Ernest B. Grainger, one of the children living at the time the will was executed, died, without issue and unmarried, prior to the termination of the trust period. The contention here is between the three surviving children of the testator, on the one hand, and the three minor grandchildren, on the other.

The three children of the testator contend that the paragraph above quoted contemplates the division of the residue trust fund among the three children to the exclusion of the minor children of the son who predeceased the testator; while the three grandchildren contend that they together are entitled to a one-fourth share of the trust fund. The trial court found and determined that the three living children were each entitled to a one-fourth share of the

trust fund and that the three grandchildren by the deceased son of testator were entitled together to the other fourth. The living children of testator have appealed.

In the solution of the questions presented, this court has been aided by able arguments and exhaustive briefs by eminent counsel.

The appellants contend that the question has been previously adjudicated by the county court, and no appeal taken therefrom, and that the controversy is *res judicata*. This contention is based upon the proposition that the county court appointed an appraiser to value the estate of the testator for the purpose of assessment of inheritance taxes, and, on the report of the appraiser, made an order directing payment of such taxes and assessing a portion thereof against a share of each legatee, and that, as to the trust estate referred to in paragraph 7d, the tax was assessed to appellants and no part thereof to the appellees. The appraiser so appointed mailed to practically all of the legatees and devisees named in the will, to the trustees and to the county attorneys of the several counties that would be entitled to participate in the inheritance tax, registered letters, informing them of the time and place of hearing. He mailed no letter to any of the appellees. However, he mailed a letter to a person who was designated in the notice as guardian of appellees. There is no proof in the record that such person was, in fact, their guardian. No guardian *ad litem* was appointed for the appellees, who are minors, to represent them at the hearing for assessment of inheritance taxes. None of them was present and none of them was represented at the hearing, and there is no evidence that they had any actual notice thereof. Moreover, no issue was framed for the construction of paragraph 7d of the will, and the question of the proper construction of that portion of the will was not litigated or determined by the county court. Later, upon the final settlement by the executors, the county court assigned the trust residue to the trustees *en masse* and not any part to any particular beneficiary.

The rule of *res judicata* has been stated in *State v. Broatch,* 68 Neb. 687, in this language:

"A 'right, question or fact' distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies. * * *

"Abstract questions of law cannot be made the subject of litigation. There must be real parties and a *res* in dispute that will become *res judicata* when the litigation is determined. *State v. Savage,* 64 Neb. 684."

In *Russell v. Place,* 94 U. S. 606, it was said (p. 608) : "It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit." And this principle was followed in *Bodie v. Bates,* 99 Neb. 253.

In *Bowker v. Drainage District,* 102 Neb. 571, this court held: "A judgment is not *res judicata* of a matter not involved and tried in the action." And in *Coon v. O'Brien,* 107 Neb. 427, the rule was announced: "Plea of *res judicata* cannot be maintained except in cases where the issues and the necessary parties in the instant case are the same as in the case wherein the judgment pleaded as a bar was rendered."

No issue respecting the proper construction of paragraph 7d of the will was framed in the county court, nor did that court render any judgment on that question. All that occurred in that respect was no more than an *ex parte* hearing and order for the guidance of the executors. So far as it directed the apportionment of inheritance tax against the shares of the respective devisees and legatees, the order was merely interlocutory. Under the facts presented by the record, the plea of *res judicata* is not sustained.

Appellants contend that the meaning of testator in the disposition of his property in paragraph 7d is obscure and uncertain; that there is a latent ambiguity, and that appellants are entitled to offer parol evidence of what was the true intent and purpose of the testator as to the disposition of the trust fund disposed of in said paragraph 7d.

The rule in this and most other jurisdictions is well established that, in construing a will, the whole thereof will be considered by the court, and from its four corners the court will determine the intent of the testator and give effect thereto if lawful.

Without much regard to canons of construction, the court will place itself in the position of the testator, ascertain his intent from the provisions of the will and enforce it, if lawful. *Weller v. Noffsinger*, 57 Neb. 455; *Krause v. Krause*, 113 Neb. 22; *Elliott v. Quinn*, 109 Neb. 5; *Heywood v. Heywood*, 92 Neb. 72.

Parol evidence is not admissible to determine the intent of a testator as expressed in his will, unless there is a latent ambiguity. *Second United Presbyterian Church v. First United Presbyterian Church*, 71 Neb. 563; *St. James Orphan Asylum v. Shelby*, 75 Neb. 591. In the latter case this court held: "Parol evidence is admissible to explain a latent ambiguity in a will, where such evidence is necessary to enable the court to ascertain the intention of the testator." See, also, *Heywood v. Heywood, supra.*

From a careful scrutiny of the entire will and especially of paragraph 7d, we are constrained to hold that there is no latent ambiguity in the will. It follows that we must therefore determine the intent of the testator from the language in the will. With respect to this question, opinions from other courts have been cited by counsel for the respective parties, in many of which the language was somewhat analagous to that under consideration in the instant case. They are enlightening as to the general principles involved, but are not controlling. Except in the more simple wills, it is rarely, if ever, that two wills are couched in precisely the same language, and the conditions

surrounding one testator may be so widely different from those surrounding another that the conclusion reached in one case is of little value as a guide in another. *Straw v. Barnes,* 250 Ill. 481.

Preliminary to discussion of the intent of the testator, as evidenced by the quoted language of paragraph 7d, it is pertinent to remark that, except from what appears in the will itself, there is no evidence as to the personal attitude of testator towards the appellees. There is no evidence to indicate that he did not have the same affection for them that he had for his living children or their issue, if any.

Appellants contend that it is significant that, if testator intended the grandchildren to share in the residue of his estate, he did not provide for the handling of their interest by trustees until they had attained some certain age, as he did with his children. A sufficient answer to this contention is that in another bequest to these grandchildren he did not provide for a trustee to handle their interest until they have arrived at any specific age other than majority. Also, in the event of the decease of any of his then living children, he did not provide that the share, which would go to their issue, should be placed in trust. We think the contention in this respect is without weight.

It is the contention of the appellants that the devise was to a class, and that the class consisted of testator's then living children; that he knew of the death of one son and that the phrase, "together with issue of such of my children as may have died prior to the happening of that event," had reference solely to the issue of the then living children; that, since the son who predeceased testator could not take, neither could the children of such deceased son be substituted in his stead, and, hence, they could not take under the will.

We think, however, appellants' contention that the class referred to was the then living children of testator, and that testator intended as substitutional devisees or legatees the issue of any of the living children who might depart this life prior to the termination of the trust period,

is not well taken. It seems clear to us that the class designated consisted not only of such of his children as might be living at the termination of the trust period, but also the issue of any of his children who had departed this life prior to the termination of such period. If our conclusion as to the intention of the testator is correct, then much of the argument in behalf of appellants is without weight. We are further strengthened in this view because the language used is not that which the testator would ordinarily have used, had he meant to limit the class under the trust to the children then living and the issue of such of the living children as might die subsequent to the execution of the will. The expression, "together with issue of such of my children as may have died prior to the happening of that event," is an expression grammatically in the perfect tense. It means the issue of, any child of testator who has died prior to the termination of the trust period. The plain grammatical meaning of the language used should be followed, unless, from the whole will, a clear intent to the contrary is disclosed. Grammatically, the language used includes the issue of any deceased child of testator, whether the child died previous or subsequent to the execution of the will. It is also significant that the will was drawn by an able lawyer, who was well acquainted with the Nebraska law and statutes and must have known that, if it was the intent of the testator to leave the trust fund to the four of his children then living and the issue of any of such four as might die prior to the termination of the trust period, there would have been no occasion to add the words, "together with issue of such of my children as may have died prior to the happening of that event."

Section 30-229, Comp. St. 1929, reads: "When a devise or any legacy shall be made to any child or other relation of the testator, and the devisee or legatee shall die before the testator, having issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if

he had survived the testator, unless a different disposition shall be made or directed by the will."

By the terms of this section, the issue of any of the children living at the date of the execution of the will, and who might die before the termination of the trust period, would take the share that would have gone to the parent of such issue. Consequently, if it had been the intention of the testator to exclude the children of his son, deceased at the time the will was executed, then the language, "together with issue of such of my children as may have died prior to the happening of that event," would be entirely meaningless and serve no purpose whatever.

Appellants suggest that the closing words of the paragraph, "per stirpes and not per capita," are indicative of an intention that the bequest was intended only for such of his children as were then living, at the time the will was executed, and their issue. We do not think that such inference is justified. Under the statute above quoted, the words, "per stirpes and not per capita," were wholly useless, if testator intended only the four children and their issue to be beneficiaries under that provision of his will.

We have given careful study to each and every provision of the will. We find nothing in any part thereof that would lead us to a different conclusion. We reach the same conclusion as did the trial court, that testator intended the issue of his son, who was deceased at the time the will was executed, should share in the residue of his estate.

The trial court in its decree provided for a readjustment of the inheritance tax paid, so that the shares of appellees would bear their proportionate part of the inheritance tax. No complaint is made of this provision by either of the parties.

The judgment of the district court appears to give effect to the intent of the testator, as expressed in his will, and is

AFFIRMED.