LOVEY BABCOCK LACY, APPELLEE, V. FAYE BABCOCK MURDOCK ET AL., APPELLANTS.

22 N. W. 2d 713

FILED MAY 10, 1946. No. 32054.

*Hamer, Tye & Worlock* and *Charles E. Wilson,* for appellants.

*George A. Munro,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

This action was commenced in the district court for Buffalo County to partition certain real estate, the ownership of which arises out of the estate of Leroy J. Babcock, deceased.

From a decree finding that the plaintiff, Lovey Babcock Lacy, and the defendant, Ruth A. Doan, are each the owners of an undivided one-half interest therein, the defendants Faye Babcock Murdock, Lovey Spaight, and John Coombe appeal, their motion for new trial having been overruled.

The appeal is from that part of the decree finding that Lovey Babcock Lacy is the owner of an undivided one-half interest in the real estate involved, there being no question as to the interest of Ruth A. Doan.

A statement of the facts out of which this appeal arises, and about which there is no dispute, will set forth the questions here involved.

Lovey Babcock Lacy, the plaintiff and appellee here,

will be referred to as the plaintiff.

On June 3, 1902, Leroy J. Babcock, whose estate is here involved, executed his last will and testament. On July 6, 1926, he died and this will was duly probated and allowed in the county court of Buffalo County.

By the provisions of this will he first gave his wife, Libbie Babcock, an undivided one-half of all of his estate. This is the one-half which she subsequently willed to Ruth A. Doan and about which there is no dispute. He then gave his wife the use and income of the other half interest for and during the period of her natural life. Thereafter, in the fourth provision of his will, he provided with reference to this one-half interest as follows: "Fourth. At the death of my wife the said Libbie Babcock it is my desire that the one half of my estate mentioned in the third clause of this will, shall descend to, and I do hereby give and bequeath the said one half of my estate mentioned in the third clause of this will, after the death of my said wife, to my brother James W. Babcock if he be then living, and if he be then dead, the same to be divided equally among his children share and share alike."

As already indicated the deceased was a married man but without children and remained thus until his death. He had a brother, James W. Babcock, who is referred to in the fourth provision of the will.

At the time the will was executed by the deceased on June 3, 1902, James W. Babcock had four children. They were Lovey Babcock Lacy, a daughter and plaintiff herein; James Elmer Babcock, a son, who died on September 30, 1909; Mayme Babcock Parsons, a daughter, who died on March 4, 1911; and Flora Babcock Coombe, a daughter, who died on March 15, 1915. It will be observed that three of the children of James W. Babcock died after the execution of the will but before the death of the testator.

The deceased children of James W. Babcock left surviving them the following children, to wit: James Elmer Babcock; a daughter, Faye Babcock Murdock; Mayme Babcock Parsons; a daughter, Marion Parsons; Flora Babcock

Coombe; a son, John Coombe; and two daughters, Lovey Spaight and Elizabeth Whitmore. All of these children are parties defendant in this action.

Subsequent to the death of the testator his brother, James W. Babcock, departed this life on March 26, 1931, and thereafter his widow, Libbie Babcock, departed this life on August 10, 1944.

It is the contention of the appellants that under this situation the children of the three deceased children of James W. Babcock take an interest, under and by virtue of provisions of the will, in the one-half of the estate of Leroy J. Babcock, deceased, in which Libbie Babcock, now deceased, had a life estate. This is the undivided one-half interest which the lower court decreed to belong to the plaintiff.

To be more specific, it is the appellants' contention that under the provisions of the will that the undivided one-half interest in which Libbie Babcock had a life estate vested in the plaintiff, Faye Babcock Murdock and Marion Parsons each a one-fourth interest and in Lovey Spaight, Elizabeth Whitmore, and John Coombe each a one-twelfth interest.

The question that arises is whether or not the provisions of section 30-228, R. S. 1943, are applicable.

The section is as follows: "When a devise or any legacy shall be made to any child or other relation of the testator, and the devisee or legatee shall die before the testator, having issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testator, unless a different disposition shall be made or directed by the will."

It is, of course, the court's duty in the construction of a will under the provisions of section 76-205, R. S. 1943, to give effect to the true intent of the testator so far as it can be collected from the whole instrument, if such intent is consistent with the rules of law. As stated in Bunting v. Hromas, 104 Neb. 383, 177 N. W. 190: " * * * the intention

of the testator is to be ascertained from a liberal interpretation and comprehensive view of all of the provisions of the will. No particular words or conventional forms of expression are necessary to make a valid will." When the language used is clear and unambiguous the court will apply thereto its usual and ordinary meaning and then apply to the construction thereof the applicable rules of law.

The word "children" as used in the fourth provision of the will is a bequest or devise to a class. As stated in Thompson on Wills (2 ed.) § 295, p. 371: "A gift to a class is a gift to a number of persons not individually named, but all answering a general description." It is further stated by the same authority in section 296, p. 373: "A common instance of a devise to a class is where a testator gives property generally to the 'children' of a certain person, without naming them; * * *." In the case of In re Estate of Schuette, 138 Neb. 568, 293 N. W. 421, wherein the will involved provided as follows: "One-fourth to the children of my deceased brother, John Schuette," we said: "The designation made in the provision of the will referred to is to children as a class, no individual being named."

Nor does the ordinary meaning of the word "children" include anyone other than a descendant of the first degree. As stated in Brown v. Brown, 71 Neb. 200, 98 N. W. 718: "It is a matter of common knowledge that, in ordinary conversation and the affairs of life, the word 'child' is commonly used to designate a son or daughter, a male or female descendant of the first degree. Such is Webster's definition of the term, and such is its primary signification according to all standard lexicons. It is safe to say that, standing alone, it is never understood to mean grandchildren."

This language is approved in In re Estate of Schuette, *supra,* the court going on to quote with approval the following statement from 69 C. J., Wills, § 1205, p. 180: "* * * as a general rule 'children,' as used in such connection, does not include grandchildren, unless it clearly appears that the testator meant to include grandchildren." No such in-

tent is here evidenced by the will.

In the case of In re Estate of Strelow, 117 Neb. 168, 220 N. W. 251, we construed the purpose of what is now section 30-228, R. S. 1943, as follows: "The purpose of this section is to prevent the lapsing of the legacy covered by the will in case of the death of a legatee who is a 'child or other relation of the testator, and the devisee or legatee shall die before the testator, having issue.' Thus, such issue take as substituted legatees or devisees, and not as heirs. The legal meaning of the word 'issue' as in this section used, considered in connection with the other provisions of the chapter of which this section forms a part, is controlling. At common law the death of a specifically named legatee or devisee prior to that of the testator caused the legacy to lapse. To prevent a general application of this rule, as we construe this chapter, the legislative body was impelled to include in such chapter the section in question, thus removing from the operation of such rule a devise or legacy to a child or other relation of the testator, who dies before the testator and leaves issue. It will be further noticed that the devise must be made to a child or other relative, thus requiring the testator to select the child or relative and so indicate by his will the person to whom the word 'issue' is to attach."

It will be noticed from the above that the testator is required to select the child or relative and so indicate by his will. Therefore, unless the members of the class are to be ascertained at a time prior to the death of the testator this statute would have no application for there could be no lapsing.

As stated in Young v. Robinson, 11 Gill & J. (Md.) 341 and approved in Stahl v. Emery, 147 Md. 123, 127 A. 760: "But we apprehend it was not the design of the Legislature to change or alter any of the existing rules in the construction of wills, but simply, to provide for such cases of legacies and devises, as by the rules of law lapsed, or failed to take effect, by the death of the devisee or legatee in the life time of the testator." Similar legislation was therein

involved under a comparable situation of facts.

There is language used in the case of Lincoln Nat. Bank & Trust Co. v. Grainger, 129 Neb. 451, 262 N. W. 11, which might be construed as broader than the foregoing construction of this statute. The language used relates to a discussion with reference to the question of ascertaining the intent of the testator by the language used in the will. The language used is as follows: "By the terms of this section, the issue of any of the children living at the date of the execution of the will, and who might die before the termination of the trust period, would take the share that would have gone to the parent of such issue. Consequently, if it had been the intention of the testator to exclude the children of his son, deceased at the time the will was executed, then the language, 'together with issue of such of my children as may have died prior to the happening of that event,' would be entirely meaningless and serve no purpose whatever." Insofar as it can be said that the language used would apply the statute to the individual member of a class named in the will as of the time of the making thereof when such will does not provide that the members thereof shall be determined at that time, we think it is contrary to the above rule which properly construes the purpose of the statute and the opinion is to that extent modified. For unless the members of a class, such as children, are to be ascertained at a time prior to the death of the testator, such as at the time of making the will, no such selection has been made by the testator so as to make the statute applicable.

The question that next presents itself is when, under the provisions of the will, was the time to ascertain who were the members of the class referred to in the fourth provision of the will as "children."

As stated in Thompson on Wills (2 ed.), section 300, p. 377: "The general rule is that the time for ascertaining the members of a class depends upon the intention of the testator, rather than upon technical language used in a particular clause of a will. As a general rule the class is to be

determined as of the time the gift is to take effect." §
301, p. 378: "Since a will speaks from the date of the
testator's death, the number of the class will, in the ab-
sence of anything in the will showing a contrary intention,
be determined upon the death of the testator." Section
300, p. 378: "The time of ascertainment may also be fixed
at a date subsequent to the death of the testator, as long
as the time so fixed is not so remote as to violate the rule
against perpetuities." Section 306, p. 384: "Where the
testator clearly intends that his gift shall pass to the bene-
ficiaries as a class, there is no lapse by reason of the death
of any one of them before the class is determined. The
death of one member of the class before the testator will
not occasion a lapse of any part of the gift, but those of the
class who survive the testator will take the whole. * * *
When, however, the parties to whom a legacy is given are
not described as a class, but by their individual names,
though they may constitute a class, the death of any one of
them, before the testator, causes a lapse of the legacy in-
tended for the legatee so dying."

"Since a will speaks as of the date of the testator's death,
where there is a testamentary gift to a class the members
of the class are *prima facie* to be determined upon the death
of the testator." 2 Alexander on Wills, § 880, p. 1291.

As stated in Stahl v. Emery, *supra,* under a comparable
situation of fact: "In determining the time at which the
members of a class to share in a gift are to be ascertained,
where it is not fixed by the will itself and where the gift is
immediate, the time is fixed at the death of the testator
(*Demill v. Reid, supra*), and where it is postponed pending
the determination of a preceding estate, it is fixed at the
distribution of the estate."

We have said in Nitz v. Widman, 106 Neb. 736, 184 N. W.
172: "A devise to testator's daughter for life, and after her
death in equal shares to her children should be construed
as referring to her children living at the time of the testa-
tor's death, but subject to open and let in any after-born
child or children coming into being before the time ap-

pointed for distribution, unless a different intention is plainly manifested by the will."

The opinion in the case of In re Estate of Schuette, *supra,* in construing the following language in the will, to wit: "One-fourth to the children of my deceased brother, John Schuette," the court said: " * * * we believe that the word 'children,' as used in the will of Frederick W. Schuette, under the circumstances, means the children of John Schuette living at the time of the testator's death * * *."

The language used in the will is clear and unambiguous. By its provisions the testator divided his property here involved into two estates. One part was a life estate which he gave to his wife. The other, the remainder, he gave to his brother, James W. Babcock, conditioned upon his surviving the widow. If he failed to do so, then it was to be divided among his, the said James W. Babcock's children share and share alike. We find nothing in the will which in any way defines, explains, interprets, or qualifies "children." Unexplained and given its ordinary meaning it refers to the children of James W. Babcock living at the date of the death of the testator. Under the rules herein set out we hold that the provisions of the will herein applicable gave the remainder of the property herein involved to James W. Babcock, contingent upon his surviving the testator's widow, Libbie Babcock, and in case of his failure to do so then to the children of James W. Babcock as a class, the members of which were to be determined at the time of the death of the testator.

We recognize that the provisions of the will defer the right to and beneficial use of the property and that the same is not to be divided until the death of the widow who has a life use thereof. This does not necessarily mean that the two estates shall not vest at the same time or that the remainder shall not vest until the death of the wife. The policy of the law is to favor the early vesting of estates and we construe the language used to refer to the time when the possession and enjoyment of the estate in remainder shall begin rather than to the date of vesting. As

stated in 2 Alexander on Wills, § 880, p. 1293: "Where, under the terms of the will, distribution to the members of a class may be either at the death of the testator or the death of some beneficiary, if there be no plainly expressed intent on the part of the testator to postpone the vesting until the later period, the earlier period will be adopted."

For the reasons herein stated the decree of the lower court is affirmed.

AFFIRMED.