LORETTO McLAUGHLIN, INDIVIDUALLY, AND LORETTO McLAUGHLIN AS EXECUTRIX OF THE ESTATE OF EDWARD P. McLAUGHLIN, DECEASED, APPELLEE, V. HELEN McLAUGHLIN HEATH ET AL., APPELLANTS.

82 N. W. 2d 533

Filed April 26, 1957. No. 34152.

*Lester L. Dunn,* for appellants.

*Richard W. Smith* and *Woods, Aitken & Aitken,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by Loretto McLaughlin, individually, and as executrix of the estate of Edward P. McLaughlin, deceased, plaintiff and appellee, against Helen McLaughlin Heath, Ann McLaughlin Hauptman, and Jane McLaughlin Hudson, defendants and appellants, the object and purpose of which is to have construed the last will and testament of Edward P. McLaughlin and procure a decree quieting title to all of the real estate of which Edward P. McLaughlin died seized in the plaintiff individually.

After joinder of issue the case was tried and a decree was rendered granting all of the relief prayed by plaintiff. Motion for new trial was filed and in due course overruled. From the decree and the order overruling the motion for new trial the defendants have appealed. They assign as ground for reversal that the trial court erred in determining that the plaintiff became the sole devisee of all of the estate of Edward P. McLaughlin,

deceased, and that the defendants have no interest what-soever in any of the estate.

It is pointed out here that the plaintiff is the widow of Edward P. McLaughlin and that the defendants are his daughters and daughters of the plaintiff.

The facts relating to this controversy are not in dispute in any material respect. The facts as they appear are that on or about January 16, 1951, the plaintiff and Edward P. McLaughlin executed a will containing, among other provisions not necessary to be repeated herein, the following:

"We, Edward P. McLaughlin and Loretto McLaughlin, husband and wife, of Lancaster County, Nebraska, both being of sound mind and disposing memory, do hereby make our joint and mutual Will in manner and form following, that is to say:

"1. The first to die directs that his or her funeral expenses, just debts and the costs and expenses of administration of his or her estate be first paid.

"2. The first to die hereby gives, devises and bequeaths to the survivor absolutely and forever the remainder of his or her estate, both real and personal, after the payment of the obligations referred to in Paragraph 1 hereof.

"3. On the death of both of the joint makers of this Will, we give, devise and bequeath to our three daughters, Mrs. Arthur H. Hudson, of Lincoln, Nebraska, Helen McLaughlin of Lincoln, Nebraska, and Mrs. Charles M. Hauptman of Lincoln, Nebraska, all our real and personal property of every description and wherever situated, absolutely and in fee simple and to their heirs and assigns forever."

This is on its face a joint will. Nothing appears in it to indicate that it depended upon any contractual understanding or consideration. There is no contention in the presentation of the parties that it in any wise so depends.

The plaintiff contends that by the paragraph num-

bered 2 she as the survivor of Edward P. McLaughlin took his estate absolutely and in fee simple free from any claim of the defendants.

The defendants contend that by the paragraph numbered 3 the estate which plaintiff took under the will was limited to a life estate with remainder to the defendants.

The plaintiff contends that paragraph 3 is not a limitation upon paragraph 2 but is a provision for the disposition of the estate of plaintiff and of Edward P. McLaughlin in case of death of the two at one and the same time.

The district court by its decree sustained the contentions of the plaintiff and rejected those of the defendants. A proper resolution of the controversy must be made agreeable to certain well-established rules for the construction of wills.

One rule is the following: "In the construction of a will, the court is required to give effect to the true intent of the testator so far as it can be collected from the whole instrument, if such intent is consistent with the rules of law." Martens v. Sachs, 138 Neb. 678, 294 N. W. 426, 134 A. L. R. 356. See, also, In re Estate of Pfost, 139 Neb. 784, 298 N. W. 739; Lacy v. Murdock, 147 Neb. 242, 22 N. W. 2d 713; Olson v. Lisco, 149 Neb. 314, 30 N. W. 2d 910; Brandeis v. Brandeis, 150 Neb. 222, 34 N. W. 2d 159.

Another rule is: "Parol evidence is inadmissible to determine the intent of a testator as expressed in his will, unless there is a latent ambiguity therein which makes his intent obscure or uncertain." Lincoln Nat. Bank & Trust Co. v. Grainger, 129 Neb. 451, 262 N. W. 11. See, also, Martens v. Sachs, *supra;* In re Estate of Pfost, *supra;* Brandeis v. Brandeis, *supra;* Scriven v. Scriven, 153 Neb. 655, 45 N. W. 2d 760.

Another is: "Where in a will there is a patent ambiguity resulting from the use of words, and nothing appears within its four corners to resolve or clarify the

ambiguity, the words must be given their generally accepted literal and grammatical meaning." In re Estate of Pfost, *supra.* See, also, Brandeis v. Brandeis, *supra.*

Another is: "A will speaks as of the date of the death of the testator." Brandeis v. Brandeis, *supra.* See, also, Lacy v. Murdock, *supra.*

Another is: "Extrinsic evidence is admissible to prove that a will contains a latent ambiguity and to explain the ambiguity for the purpose of arriving at the true intent of the testator." Borah v. Lincoln Hospital Assn., 153 Neb. 846, 46 N. W. 2d 166.

In an approach to the determination of this case it is pointed out that the plaintiff in her presentation here does not contend that the testator could not have by appropriate provision limited the estate to be taken by plaintiff under the language of the will to less than a fee, but only that he did not do so. On the other hand it is not contended that in the absence of limitation in the will fee simple title would not have passed to plaintiff by paragraph 2. The substantial contention of the defendants is that paragraph 3 is a limitation and that by it the plaintiff took a life estate in the lands of Edward P. McLaughlin rather than a fee simple title thereto.

On the face of the will there is uncertainty as to the intended application of paragraph 3. On its face the declaration is joint as to disposition of property. The plaintiff urges that by its terms it contemplates that joint application would become effective only on the simultaneous death of plaintiff and Edward P. McLaughlin.

If that is the proper interpretation, of course in the event of separate death of one or the other of the two, the defendants would never take anything by the terms of the will. After the death of one the survivor would have and possess all of the property of both free from any present or future claims of the defendants. Taken by itself it cannot well be said that the paragraph is

incapable of this interpretation. It does not however exclude other interpretations.

On the other hand the defendants contend substantially that by the terms of paragraph 3 the two parties in the execution of the will expressed the intention that the property of the first to die should pass to the other for life and that at the death of the survivor it should pass to the defendants. We cannot say that the paragraph is incapable of this interpretation, but it does not exclude other interpretations.

By the terms of paragraph 3 it is provided that the property of both would pass to the defendants, but we are directly concerned here only with what, if any, of the estate of Edward P. McLaughlin would pass to the defendants. We are concerned only academically with the question of whether or not, if paragraph 3 is a limitation upon the estate contemplated by paragraph 2, the estate which plaintiff had in her own right at the time of her husband's death would be in anywise affected by the paragraph. We are not unmindful however of the possibility that what is said herein may have the ultimate effect of declaring the intent of the plaintiff with regard to her own property by what was said in the will.

In Brandeis v. Brandeis, *supra,* it was said: "Where on the basis of the language employed by a testator a will is capable of more than one interpretation the ambiguity is patent and not latent and extrinsic evidence is inadmissible to aid in its interpretation."

Since, as pointed out, the provisions of this will are capable of more than one interpretation it becomes necessary to say that it contains a patent ambiguity. It therefore becomes necessary, agreeable to authority cited herein, to ascertain the true intent of the testator from what is contained within the four corners of the will and in so doing to give the words employed their generally accepted literal and grammatical meaning.

From this will it is clear that by the terms of paragraph 2 the only thing attempted was that the survivor

should have and possess the property of the other. There is nothing in the will anywhere to indicate that this was based upon any kind of mutual promise, agreement, or consideration. No such contention is made by the defendants. It is only in instances where it is contended and the contention is supported by proof which is clear, satisfactory, and unequivocal that a decision may rest on the proposition that the terms and effect of a will depend upon a contract. This is the rule as applied to actions for specific performance and obviously it is applicable in other instances where contractual obligations sought to be enforced are brought into question. Petersen v. Hitchcock, 128 Neb. 381, 258 N. W. 669; Rogers v. Casady, 134 Neb. 227, 278 N. W. 267.

There is nothing in paragraph 3 which in anywise purported to burden the separate estate of the survivor in case one of the parties predeceased the other. There is nothing in it which purported to burden the devised estate in the hands of the survivor. On the face of paragraph 2 the conclusion is inescapable that within legal contemplation the action of the two parties had several as distinguished from joint application.

It is not until paragraph 3 is examined that any phase of joint intention or action becomes apparent. As pointed out the defendants contend that the intent and purpose of this paragraph was to limit the devise of paragraph 2 to a life estate. If this is true, in legal contemplation, in view of the absence of anything to disclose any contractual or mutual action based on consideration in the making of the will, it would not effect a disposition of the estates of both parties at the death of the survivor. Under such circumstances the survivor would of course have full control of the disposition of his or her estate after the death of the first to die.

It may not be presumed that the parties intended anything less by the will than a full and complete disposition of their separate estates under a condition where, consistent with law, there could be such a full and com-

plete disposition.

The language of paragraph 3 permits without inconsistency and without putting any strain upon it, an interpretative intent the effect of which would be to accept the declared intent and purpose of paragraph 2 and at the same time give effect to paragraph 3 as a full and complete disposiiton of the estates of both of the parties.

This interpretation would have the effect of saying that when the parties used the words "On the death of both of the joint makers of this Will," they intended to say that if they died at the same time paragraph 3 should provide the mode and method for the disposition of their respective estates. Significantly, it is believed, in this quoted statement the parties speak of one death but of two parties. Of course words may be employed in different senses, but in the interpretation of a patent ambiguity in a will, as pointed out, the courts must base decisions upon the literal and grammatical meaning of words and phrases as they appear in the will itself.

To accept this interpretation of paragraph 3 does not destroy or burden any of the other provisions of the will. It allows full effectiveness to all of the provisions.

Accordingly the conclusion is reached that the construction contended for by plaintiff has been sustained. In consequence of this the judgment of the district court is affirmed.

AFFIRMED.

SIMMONS, C. J., dissenting.

Plaintiff pleaded for a construction of the will and for a decree quieting title in her. Defendants pleaded that plaintiff acquired only a life estate and that the fee was in them. They prayed only for a dismissal of the petition.

I disagree with the court's construction of the will.

The plaintiff testified in this case in the trial court. Without objection, and in patent violation of many basic rules of evidence, plaintiff by leading and suggestive questions testified as to conclusions of not only her in-

tent in making the will but as to the intent of her deceased husband. By that process she was led down the pathway of a theory of simultaneous death, as in the minds of both the makers of the will, which nullifies many of its provisions.

The court properly holds that that evidence was inadmissible, but it was admitted without objection. The court rejects the evidence and construes the will in accord with it. The suggestion of simultaneous death intentions is not found in the will. It is in the testimony of the plaintiff.

The defendants offered no evidence.

On appeal here defendants cite section 76-205, R. R. S. 1943, as to the construction of instruments. They then cite Annable v. Ricedorff, 140 Neb. 93, 299 N. W. 373, point out its differences and similarities with the instant case, and conclude that it "would appear" that the defendants receive the fee under the will and the plaintiff the life estate.

The court states that it becomes necessary to ascertain the true intent of the testator (singular) from what is contained within the "four corners of the will" and give the words employed their "generally accepted literal and grammatical meaning."

The court construes the will to be the will only of the first testator to die, except in the case of simultaneous deaths of both testators. It reaches that conclusion although stating that it will not be presumed that the parties intended anything less than "a full and complete disposition of their separate estates." The survivor is without a will, although she is the maker of a "joint and mutual" will. It is now a nullity. No such intent can be gathered from this "joint and mutual" will.

We have held that simultaneous means taking place at the same time. Securities Credit Corp. v. Pindell, 153 Neb. 298, 44 N. W. 2d 501.

I readily agree that a will could provide for the dis-

position of property in the event of simultaneous deaths. There is always the possibility of simultaneous deaths of a husband and wife who live and often travel together. Common knowledge, however, is that such deaths happen rarely.

Had the makers of the will contemplated such a situation and revealed that intent to the scrivener, a few simple words would have sufficed to state it. But they were not used.

The will does not suggest the intent to devise to meet that contingency. It is only by starting with that premise dehors the will that the conclusion is reached which the court sustains.

The court states the necessity of examining what is contained within the four corners of the will and yet it sets out only the opening paragraph and the first three numbered paragraphs of the will. It states that the others are not necessary to be stated.

The court omits two paragraphs which comprise over 40 percent of the body of the will. Both bear number 5. I state them as 5(a) and 5(b):

5(a). "At his request, *we* have made no provision for our son William McLaughlin of Atchison, Kansas, and for reasons best known to him and to us; however, *we* rely upon our said daughters to see to it that he is well provided for during the term of his natural life. *We* have full confidence in our said daughters to carry out this request." (Emphasis supplied.)

5(b). "The one dying first hereby appoints the other executor or executrix hereof, and upon the death of both of us, the joint makers of this Will, we appoint our daughters, Mrs. Arthur H. Hudson, Helen McLaughlin, and Mrs. Charles M. Hauptman, as executrices hereof, and we further empower Edward P. McLaughlin or Loretto McLaughlin, if appointed as executor or executrix hereof, and our said three daughters if appointed executrices under this Will to sell and convey without the order of any Court any real estate wheresoever lo-

cated belonging to *this estate."* (Emphasis supplied.)

These two paragraphs contain provisions that go to the question of the intent of the makers. I would go to the entire will and to its four corners.

The opening sentence of the will begins with "We" followed by "both" and later by "our joint and mutual Will." The language does not indicate an intent that the makers were drafting a will applicable only to the estate of the first to die except in the case of simultaneous deaths of the two makers. No such suggestion appears in that provision.

The last two words of the will are "this estate." That indicates that the makers of the will contemplated one estate (not estates). By the will they were, in intent, merging their separate estates and making a complete disposition of "this estate."

This is a common provision in wills of husband and wife. Clearly, so far as paragraph 2 is concerned, there is no basis for reading a simultaneous death intent into the will. This provision by its clear language applies only in the event of a nonsimultaneous death.

Paragraph 3 of the will clearly contemplates that "this estate" shall vest in the three daughters "On the death of both of the joint makers." The language used is "all *our* real and personal property." The court construes this to mean as providing for the disposition of the estate only in case of simultaneous deaths. Had such an intent been revealed to the scrivener, the easy statement could have been: "In the event of the simultaneous deaths of the joint makers." Such language was not used and such an intent is not suggested by the will. The paragraph is one making an all-inclusive, general disposition of "our" property. The court construes it to be a paragraph applicable only in the event of the possible contingency of simultaneous deaths.

Paragraph 5(a) explains the omission of a son from the benefits of the will. It is a statement that came from the heart of parents. It expresses a trust in the

daughters, who are beneficiaries in the will, to care for the brother. It expresses the desire of each testator by the use of the word "we" repeatedly in the paragraph.

As the court construes the will that natural desire of the parents and the trust in the daughters were intended to be made effective only in the case of simultaneous deaths. In the absence of simultaneous deaths this court, in result, holds that it was the intent of the makers that the survivor was free to make "no provision for our son." The daughters, although they may later inherit their mother's estate are likewise free from the moral obligations of the trust. I find no suggestion in the will of such an intent. The desire of the father that his son be "well provided for during the term of his natural life" is now optional with the mother.

Paragraph 5(b) starts: "The one dying first * * *." This clearly does not contemplate simultaneous deaths. It recognizes the natural probability of nonsimultaneous deaths. The paragraph, and as a part of the same sentence, provides that "upon the death of both of us" the daughters are appointed as executrices of the will. Taken together these two clauses clearly indicate a quite natural desire and intent that when the first of the makers dies and the will is probated as to that joint maker, the other maker is to be executor of the "joint and mutual will"; and that when the other joint maker dies and the will is probated as to that maker the daughters are to be executrices. It is a normal provision and one that does not in anywise suggest an intent to have it apply only in the event of the simultaneous deaths of the two makers.

The remaining provision of paragraph 5(b) is a general grant of power to sell and convey. It goes first to either of the two makers who survives. It obviously excludes the contingency of simultaneous deaths. If it was the intent of the makers that paragraph 3 was only to apply in the event of simultaneous deaths and that in the event of nonsimultaneous deaths the fee title to

the property vested in the surviving maker, then the survivor would have the power of sale as a matter of law and this provision would be surplusage.

If the daughters were to take under the will only in the event of simultaneous deaths, then they would be receiving a fee title with a like power of sale as a matter of law.

It was suggested in oral argument that this power of sale was included so as to permit a sale to pay debts and costs of administration. Had that been the intent it could have been quite easily expressed in the will. It was not so expressed. It is also obvious that the value of this estate is such that a power of sale for that purpose was not necessary and was not contemplated.

As the court construes the will, except in the case of simultaneous deaths, only paragraphs 1 and 2 are effective and then only as to the "joint and mutual" maker first to die. A "full and complete disposition of their separate estates" is not had. The "four corners" of the will are reduced to include only these two paragraphs:

"1. The first to die directs that his or her funeral expenses, just debts and the costs and expenses of administration of his or her estate be first paid.

"2. The first to die hereby gives, devises and bequeaths to the survivor absolutely and forever the remainder of his or her estate, both real and personal, after the payment of the obligations referred to in Paragraph 1 hereof."

I would reverse the judgment of the trial court and remand the cause with directions to render judgment holding that the plaintiff was devised a life estate and that the defendants were devised the fee title subject to the plaintiff's life estate, and I would do that although the defendants did not pray for such a construction of the will.