In re Clapham's Estate.   John H. Clapham v. Jasper
C. Clapham et al.

Filed April 5, 1905.   No. 13,749.

1. Will Contest: Insanity.   An undue prejudice based on some reason
   is not an insane delusion.

2. Action of the trial court in excluding evidence examined and ap-
   proved.

3. Costs.   The discretion conferred on the courts by section 623 of
   the code in taxing costs is not arbitrary, but a legal one to be
   exercised within the limits of legal and equitable principles.
   *Wallace v. Sheldon*, 56 Neb. 55, followed and approved.

4. ———. *Held*, That in the instant case it was inequitable to tax the
   fees of the guardian *ad litem* of a minor beneficiary under the
   will against the contestant.

Error to the district court for Saunders county: Ben-
jamin F. Good, Judge.   *Judgment modified.*

*John H. Barry*, for plaintiff in error.

*Courtright & Sidner, contra.*

Oldham, C.

In May, 1903, Edward Clapham departed this life tes-
tate, at Cedar Bluffs, Saunders county, in this state, leav-
ing surviving him his widow and seven children.   A writ-
ten will properly attested by two subscribing witnesses,
and executed in July, 1900, by the deceased, was duly
offered for probate in the county court of Saunders county.
The estate disposed of by the will was of the value of about
$40,000.   One-half of the estate was devised absolutely to
the widow, and the other half equally divided between six
of his surviving children, to the exclusion of John H. Clap-
ham, the eldest son.   With reference to this son, one para-
graph of the will reads as follows: "I do not desire that
any portion of my property shall under any condition go
to my son John H. Clapham, or to his issue, as I have al-

ready given him his share." When the will was offered for probate, John H. Clapham filed objections in the probate court, alleging, in substance, that at the time of the purported execution of the will the testator was not of sound and disposing mind, and also that the will was produced by undue influence of Mrs. Callaway, one of the daughters of the testator. After hearing the objections in the county court the will was admitted to probate, and the contestant appealed from the decision of the county judge to the district court for Saunders county, where, on a hearing to the court and jury, a verdict was directed for the proponents of the will. Contestant thereupon filed a motion to tax the costs of the proceeding against the estate, which motion was overruled, and all costs of the proceedings were taxed to the contestant. A motion for a new trial was also filed by contestant and overruled by the court, and judgment was entered upon the verdict, and to reverse this judgment contestant brings error to this court.

The first objection urged is that the court erred in directing a verdict for the proponent. The evidence touching on the mental condition of the testator is not seriously conflicting in the record. It may be said to be clearly established that the testator had been in poor physical health for several years prior to his death, and had suffered from a complication of catarrh of the stomach, bronchitis and consumption. But the evidence is equally certain that he retained his mental faculties up to the very close of his life. The testimony shows that deceased was very exacting in his business matters with anyone with whom he had dealings, and was very industrious and a man of strong prejudices; that prior to 1896 he had been on good terms with the contestant, but that about that time he made a contract with the son for the sale of 225 acres of land, and also claimed a contract for the feeding of stock on the place; that a difference arose between father and son concerning this contract, and the litigation followed and continued in the courts for some time, when it was finally settled and compromised; that after this litigation the father

became embittered against the son, and not long after the close of the litigation executed the will in controversy. It is also in evidence that the testator had executed a former will, in which he had also disinherited the son for the reason, as alleged in that will, that contestant had already had his full share of the estate. The only testimony in the record relied upon as tending to show insanity is that of the contestant and his wife, who each testified that they regarded their father as being generally sane, but as having an insane prejudice against the contestant. They base their opinion of insanity, however, on the ground that the father was always scolding about the son, claiming, without just reason and without just cause, that he was lazy, shiftless and reckless in the expenditure of money. This prejudice, however, manifested itself after the litigation between father and son and only, at most, tends to show an undue prejudice based on some reason rather than an insane delusion. Against this evidence is the testimony of numerous witnesses, both expert and non-expert, tending to show that the mental faculties of the testator were well preserved up to the time of his death. We think that in view of this testimony there was no evidence in the record from which reasonable minds might have drawn different conclusions on the question of the mental capacity of the testator, and that so far as this issue was concerned the trial court was fully justified in directing a verdict.

On the issue of the undue influence of Mrs. Callaway in the making of the will, the evidence admitted wholly fails. This is practically conceded in the brief of contestant, and error is predicated on the action of the trial court in excluding testimony offered in support of this issue. Contestant testified to a conversation with his father about the first will which he made, in which he says his father admitted Dorothy (Mrs. Callaway) importuned him to leave John (contestant) out. This evidence was stricken out by the trial court, and error is alleged against this ruling. It will be noted that this alleged conversation was not with reference to the will in controversy, but to a former one,

and that it is not followed by proof tending to show continued coercion over the testator by the daughter from 1 time of the making of the first will to the time of making the one in issue. Nor is there any evidence in the record that shows that Mrs. Callaway knew anything about the execution of the last will at the time it was made. It is conceded by plaintiff in error that this testimony would not be competent for the purpose of proving undue influence, but the claim is that it should have been admitted for the purpose of showing coercion. If it had, it would have been the only testimony in the record tending to show th' fact and, standing alone, would certainly have been insufficient to establish it. We therefore conclude that the district court was fully justified in striking this testimony from the record, and that, as there was no competent evidence in the record tending to show undue influence, the instruction directing a verdict for proponents was properly given.

The next question urged is that the courts erred in taxing the entire costs, including the fee of the guardian *ad litem* of one of the minor beneficiaries, to the contestant. In *Wallace v. Sheldon*, 56 Neb. 55, the question of the taxation of costs in cases in which wills are contested was examined, and it was there held that the power to tax costs in cases of this character is contained in section 623 of the code, and that "the discretion conferred on the courts by section 623 of the code is not an arbitrary, but a legal, one, to be exercised within the limits of legal and equitable principles." While the contest in this case may, as observed by plaintiff in error, have been instituted in the utmost good faith, yet an examination of the record shows that it is based on very meager and indefinite suspicions, rather than competent testimony tending to establish the averments. We are therefore impressed with the idea that the learned district judge was fully justified in taxing the costs generally against the contestant, but, as the guardian *ad litem* of the minor appears to have been appointed by the county judge for the special and proper purpose of pro-

tecting the interest of the minor, we hardly think it equitable to tax this fee against the contestant.

We therefore recommend that the judgment of the district court be modified by taxing the fee of the guardian *ad litem* to the proponents, and that, as so modified, the judgment be affirmed.

AMES and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is modified by taxing the fee of the guardian *ad litem* to the proponents, and, as so modified, the judgment is affirmed.

JUDGMENT ACCORDINGLY.