POLLY ANNA LUDLOW ELLINGROD, APPELLANT, V. O. D. TROMBLA ET AL., APPELLEES.

95 N. W. 2d 635

Filed March 27, 1959. No. 34476.

*Clifford H. Phillips* and *Howard S. Foe,* for appellant.

*Cline, Williams, Wright & Johnson,* for appellees Trombla et al.

*William A. Letson,* for appellees Ellingrod et al.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit to obtain specific performance of a contract for the sale of real estate. The trial court denied the prayer of plaintiff's petition and the plaintiff has appealed.

The sole question involved is whether a devise of the real estate contained in the will of Mildred Ludlow, the mother of the plaintiff, vested a fee simple title or a life estate with a remainder in her descendants. The devise provided: "To my daughter, Polly Anna Ludlow, and her descendants, I will the quarter section of about 162 acres of farm land, SE¼ 4-2-11 in Webster County, Nebraska." There is no other language within the four corners of the will to indicate the intention of the testatrix other than the foregoing provision.

The testatrix died in 1948. The will was executed about 3 months prior to her death. The will was in the handwriting of the testatrix and was evidently made without the assistance of one skilled in the drafting of wills. At the time of the death of testatrix Polly Anna Ludlow was unmarried and had no children. She was married in 1950 and at the time of trial had two children, Holly and Ruth Ellingrod, ages 5 and 2 years, respectively.

On July 25, 1957, plaintiff entered into a contract to sell real estate to O. D. Trombla, Robert A. Dobson, and Adna A. Dobson. The latter contend that the title is not merchantable by reason of the provisions of section 76-113, R. R. S. 1943, which provides: "When an otherwise effective conveyance of property is made in favor of a person and his 'children,' or in favor of a person and his 'issue,' or by other words of similar import designating the person and the descendants of the person, whether the conveyance is immediate or postponed, the conveyance creates a life interest in the person designated and a remainder in his designated descendants, unless an intent to create other interests is effectively manifested." This section must be construed with section 76-110, R. R. S. 1943, by which fees simple conditional and fees tail are abolished and any attempt to create such estates is stated as creating a fee simple title in the person who would have taken a fee

simple conditional or a fee tail. The latter section specifically provides that: "Nothing herein contained shall affect the operation of sections 76-111, 76-112 and 76-113 of this act."

The foregoing sections are a part of a single legislative enactment. All are a part of a uniform property act and therefore must be construed together to give effect to all. It will be noted by section 76-110, R. R. S. 1943, that fees simple conditional as they existed under the law of England prior to the "statute de donis" are no longer permitted. The statute also prohibits the creation of fee tail estates. Since by the adoption of the "statute de donis" a fee simple conditional became a fee tail, the inhibiting provisions of the statute have the effect of prohibiting the creation of fee simple conditional and fee tail estates, and any attempt to create them results in a fee simple title in the person who would otherwise take a fee simple conditional or a fee tail estate. We point out that the pertinent language of the will creates a fee tail estate under the common-law doctrine of Wild's Case, 6 Coke 16b, and except for section 76-113, R. R. S. 1943, the fee tail estate in plaintiff would be converted into a fee simple estate by section 76-110, R. R. S. 1943. But we must take notice of the fact that section 76-110, R. R. S. 1943, is inapplicable by its own terms to conveyances that fall within the scope of section 76-113, R. R. S. 1943.

By section 76-113, R. R. S. 1943, the Legislature has provided that a conveyance of property in favor of "a person and his 'children,' or in favor of a person and his 'issue,' or by other words of similar import designating the person and the descendants of the person," creates a life interest in the person and a remainder in his descendants in the absence of a contrary intent manifested in the will. When the testatrix devised the property "to my daughter, Polly Anna Ludlow, and her descendants," the devise came within the scope of section 76-113, R. R. S. 1943, which is the applicable pro-

vision rather than section 76-110, R. R. S. 1943, by reason of the express terms of the latter section. The words "and her descendants" contained in the devise are words of similar import within the meaning of that term contained in section 76-113, R. R. S. 1943. Godden v. Long, 104 Neb. 13, 175 N. W. 655; Wilkins v. Rowan, 107 Neb. 180, 185 N. W. 437; Seybert v. Seybert, 118 Neb. 246, 224 N. W. 1; Salmons v. Salmons, 142 Neb. 66, 5 N. W. 2d 123.

We necessarily come to the conclusion that under section 76-113, R. R. S. 1943, plaintiff would take a life estate and her descendants would take a fee simple interest as a class if there were descendants in being at the death of testatrix, the effective date of the will. This interpretation of section 76-113, R. R. S. 1943, is admittedly in conflict with Restatement, Property, § 283(a), p. 1483. In the special note to section 283, Comment a, this is made clear. By the enactment of section 13 of the Uniform Property Act by the Legislature as section 76-113, R. R. S. 1943, the life interest and remainder construction was adopted in this state and it applies to all cases which are within either the rule stated in (a) or (b) of Restatement, Property, § 283, p. 1483. See, also, 5 American Law of Property, § 22.26, p. 306, and note 9, p. 310; Simes and Smith, Law of Future Interests (2d Ed.), § 701, p. 173. The question then arises as to the nature of the estate conveyed when the devise is to a named person and her descendants and there are no living descendants on the effective date of the will, as in the present case.

We think the rule is correctly stated in the Restatement of the Law of Property as follows: "When a conveyance limits property in favor of 'B and his children' or by other words of similar import, then, unless a contrary intent of the conveyor is found from additional language or circumstances, * * * (b) if B has no child at the time when this conveyance becomes effective, the named parent is not a member of any class, but the

conveyance is construed to limit a life interest in favor of such named parent and a class gift in favor of the children of such parent." Restatement, Property, § 283, p. 1483. See, also, 5 American Law of Property, § 22.20, p. 294, and footnote 5, p. 295, and § 22.21, p. 297, and footnote 12, p. 299; Simes and Smith, Law of Future Interests (2d Ed.), § 692, p. 157, and footnote 7, p. 160.

It is important, we think, to discuss the historical background of the Uniform Property Act, now sections 76-101 to 76-123, R. R. S. 1943. In this respect we point out that the Uniform Property Act was prepared by the National Conference of Commissioners on Uniform State Laws and the American Law Institute acting jointly. The act received years of study on the part of a dozen or more of the best-known authorities on the law of property to be found in America. The act was drawn primarily to abolish anachronisms in the law of property, to abolish many out-of-date characteristics which have come down to us from the early feudal law of England, and which are out of place in the law of today, and also to correct many characteristics which have crept into the law from improper application of the early law and which can be gotten rid of today only by statutory enactment. See Commissioners' Prefatory Note, 9B Uniform Laws Annotated, p. 403. The purpose and policy of the Uniform Property Act is to make the law a much more modern and effective instrument in administering the law of property and to free courts and lawyers of the present from being compelled in cases involving the title to real property to wander in a labyrinth of ancient learning. The modernization of our real property law, including antedated provisions that serve no purpose in our modern era, was long overdue when the Legislature enacted the Uniform Property Act into the statutory law of this state in 1941. The power of the Legislature to meet the need is not questioned. Its very purpose was to change the old order insofar as the

conveyance of property was concerned. This is evidenced by the terms of the law which it enacted. By section 76-121, R. R. S. 1943, it enjoined upon the courts the duty to construe the act so "as to effectuate its general purpose to make uniform the law of those states which enact it." From this it is made clear that the act is to be interpreted, where doubt as to its meaning exists, in conformity with the intentions of the drafters of the act. If this were not so, and courts undertook to interpret the act without considering the intentions of its drafters, one of its main purposes would be defeated before it shed its swaddling clothes. In People's Savings & Trust Co. v. Sheboygan Machine Co., 212 Wis. 449, 249 N. W. 527, 88 A. L. R. 1306, the court in discussing the interpretation to be given a uniform act said: "The act was drafted by the Commission on Uniform Laws, submitted as drawn to the legislature, and adopted by the latter without amendment. In construing a uniform law the meaning of which is not clear, the intention of those who drafted it, if that intention may be ascertained, should be given controlling consideration, else the desired uniformity will not result. Futile indeed is the passage of uniform laws by the several states if the courts are to construe them differently."

It is argued that section 76-113, R. R. S. 1943, is not clear and that we should follow the rule announced in Lacy v. Murdock, 147 Neb. 242, 22 N. W. 2d 713, which states: "Since a will speaks from the date of the testator's death the number of the class will, in the absence of anything in the will showing a contrary intention, be determined upon the death of the testator." We point out that the Uniform Property Act was not applicable to the facts in that case for the reason that testator died prior to August 24, 1941, the effective date of the Uniform Property Act. But, in any event, the Lacy case does not specifically hold that contingent future interests in real property are not recognized in this state.

In fact, they have been recognized for many years. Wilkins v. Rowan, *supra;* DeWitt v. Searles, 123 Neb 129, 242 N. W. 370; Drury v. Hickinbotham, 129 Neb. 499, 262 N. W. 37. In the Wilkins case this court said: "The policy of the law has always been to look with favor upon the early vesting of estates, and a remainder will never be held to be contingent if it can reasonably be held to be a vested remainder." In the DeWitt case we said: "Contingent remainders, however, are not necessarily void." In the Drury case we approved the following: " 'Whenever it is possible the future interest will be construed as vested, and hence alienable and devisable by the remainderman. It is not so much the certainty or the uncertainty of the enjoyment of the fee in remainder after the life estate ends as the uncertainty of the person who has a present right to enjoy the future estate if the particular estate came to an end now, which determines the character of the remainder. A remainder is vested if the remainderman, being alive, will take at once if the life tenant were to die. The fact that his enjoyment is postponed, and, on a certain event, as on his death, may never take place at all, does not make the remainder contingent. But where there is no person now in being upon whom the enjoyment and possession of the remainder would devolve as a remainderman, if the particular estate were to terminate, the remainder is contingent.' 2 Underhill, Law of Wills, sec. 860."

It is clear therefore that prior to the enactment of the Uniform Property Act it was the policy of the law of this state to look with favor upon the early vesting of estates, and a remainder would never be held to be contingent if it could reasonably be held to be a vested remainder. Contingent remainders were recognized, and where there is no person in being upon whom the enjoyment and possession of the remainder would devolve as a remainderman, if the particular estate were to ter-

minate, the remainder would be recognized as a contingent one.

But whether or not the law declared by the courts of this state prior to the enactment of the Uniform Property Act conflicts with the latter act, and whether or not contingent future interests were then recognized, the legislative enactment of the Uniform Property Act makes it the controlling law of property in this state. The enactment of the Uniform Property Act into the law of this state was a proper exercise of the legislative power and the courts are obliged to adhere to its provisions. Any failure by the courts to apply the plain provisions of the act would amount to an encroachment upon the powers of the Legislature to fix the policy of the state in this field.

The intended meaning of section 76-113, R. R. S. 1943, as hereinbefore stated, is to provide that a devise in terms which falls within this section, whether or not children, issue, or descendants are in being when the testator dies, the life estate and remainderman construction applies. In the case before us the daughter, Polly Anna Ludlow, takes a life estate with the remainder in her descendants. There being no descendants in being at the time of the death of the testatrix, the remainder interest is a contingent one. By section 76-107, R. R. S. 1943, of the Uniform Property Act, it was made clear that contingent future interests were to be recognized by the use of the following language: "The conveyance of an existing future interest, whether legal or equitable, is not ineffective on the sole ground that the interest so conveyed is future or contingent."

We conclude that the devise in the present case conveys a life estate to Polly Anna Ludlow and a contingent remainder to her descendants as a class. The trial court came to the same conclusion and supported it by an able memorandum opinion found in the record. We necessarily hold that Polly Anna Ludlow does not have a merchantable fee title to the property which she con-

tracted to sell to the defendants.  The decree of the district court denying the specific performance of the contract of sale is correct.

AFFIRMED.