HAROLD HAUSCHILD, APPELLANT, V. EMMA HAUSCHILD ET AL., APPELLEES.

126 N. W. 2d 192

Filed January 31, 1964. No. 35539.

Clements & Clements, Ginsburg, Rosenberg & Ginsburg, and Norman Krivosha, for appellant.

James F. Begley, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an action to construe the will of Harry Hauschild who died January 12, 1957. The will was admitted to probate in the county court of Cass County, Nebraska, on January 25, 1957.

The testator was survived by his widow, Emma Hauschild, and three children, Harold Hauschild, Charlotte Mohr Eilers, and Eileen Smith. Harold Hauschild is the plaintiff and appellant. The defendants and appellees are Emma; Charlotte, her husband and children; Eileen and her husband; the children of Harold; and the successor trustee under the will. All of the defendants defaulted except the trustee and the children of Harold and Charlotte who are represented by a guardian ad litem.

The controversy relates to paragraph 4 of the will which provides as follows: "4. I give, devise, and bequeath all of my real estate to Paul E. Fauquet as Trustee, for the following uses and purposes:

"(a) That he shall keep all of the rest of the lands rented and keep the buildings in repair and the land in conservation and in a high state of fertility so long as the funds for that purpose shall be adequate and still leave an adequate sum for the support of my wife.

"(b) That he shall permit my wife to occupy the residence on the home-farm, together with such ground as she shall require for her personal needs, so long as she shall desire the same, or for her lifetime.

"(c) That he pay the net rentals, after expenses, to my wife for her support, keeping a suitable reserve for any forseeable emergency.

"(d)   That after the death of my wife, he make division of my estate among my children, as nearly equally as may be, with authority to sell all or any part of the real estate, as may in his judgment seem necessary or adviseable (sic), without the requirement of the approval of any Court, in order to effect such equal partition without imposing any undue or unnecessary hardship upon any of my children.

"(e)   That for the protection of the share which is allotted to my daughter, Charlotte Mohr, it shall not be distributed to her in cash, nor placed in property that is disposable by her during her lifetime, but she shall be entitled to income from such property during her lifetime and at her death all of such property, in whatever form, shall descend to her lineal descendants by right of representation.

"(f)   That for the protection of the share which is allotted to my son, Harold Hauschild, it shall not be distributed to him in cash, nor placed in property that is disposable by him during his lifetime, or shall either the property nor the income therefrom, during his lifetime, shall be subject to his debts whomsoever, but all of said property shall be held by the Trustee together with the income therefore, however, the Trustee shall have the right and authority in his discretion to distribute all or a part of the income therefrom to my said son, as in his judgment he sees fit, and at the death of my said son, all of which property together with any remaining income in the hands of the Trustee shall descend to his lineal descendants by right of representation.

"(g)   That in order to effectuate the foregoing paragraphs, the Trustee shall have full power and authority to invest the proceeds of sale of real estate in securities approved by the laws of Nebraska for the investment of trust funds, or he may, if, in his judgment it is for the best interest of the beneficiaries of these funds, invest such funds in real estate, or he may buy and sell either securities or real estate and reinvest the proceeds there-

of as in his judgment is for the best interests of the beneficiaries thereof.

"(h) That my Trustee shall have discretion in determining the price to be set for the transfer of any of my real estate to any of my children in partition of my estate in that he is not required to obtain from him or them as high a price as might conceivably obtained upon a public sale."

At the time of his death, the testator owned 400 acres of land and an undivided one-half interest in another 120 acres of land in Cass County, Nebraska. The real estate was subject to a mortgage in the amount of $12,744.72.

The decedent left personal property in the amount of $16,587.50. Claims in the amount of $39,959.37 were filed against the estate. In order to raise funds with which to pay claims and expenses, the administratrix sold a 40-acre tract for $5,000 and placed a mortgage in the amount of $30,000 upon the other real estate.

Within the time provided by law, the widow elected to take under the statute instead of under the will. The widow also claimed her homestead rights in a 160-acre tract. Thus, the widow now has an undivided one-third interest in all of the land owned by the deceased together with a life estate in the 160-acre tract.

One of the contentions made by the plaintiff is that the election of the widow destroyed the plan and purpose of the testator and that as a result thereof the will should be declared inoperative. The rule is that the renunciation of a will by a widow will not be allowed to break the testamentary plan further than is absolutely necessary. If, after the widow's portion has been set aside, the estate of the decedent is left in such condition that the remaining provisions of the will can be carried out according to the testator's intent, the will will not be declared inoperative. In re Estate of Grobe, 101 Neb. 786, 165 N. W. 252.

The testamentary plan in this case was to give the

net income from the land to the widow for her use during her life. Upon the death of the widow, the property was to be divided equally among the children of the testator, but the shares of two of the children were to be held in trust. These two children were to receive only the income, or a part of the income, from their shares of the property. On their death their shares of the property were to descend to their lineal descendants by right of representation.

The election of the widow in this case had the effect of diminishing the amount of property in which the children will share, but the testamentary plan is not otherwise destroyed. Under the circumstances in this case the election of the widow did not destroy the testamentary plan and the will is operative upon the property remaining after the widow's portion of the estate is set aside.

The principal contention of the plaintiff is that Charlotte and the plaintiff are not restricted to the income, or a part of the income, from their shares of the property, but that they each take their shares of the property absolutely. In support of this contention, the plaintiff relies upon the Uniform Property Act, section 76-110, R. R. S. 1943, and the rule against perpetuities.

Section 76-110, R. R. S. 1943, provides as follows: "The creation of fees simple conditional as they existed under the law of England prior to the 'statute de donis' is not permitted. The creation of fees tail is not permitted. The use in an otherwise effective conveyance of property, of language appropriate to create such a fee simple conditional or a fee tail, creates a fee simple in the person who would have taken a fee simple conditional or a fee tail. Any future interest limited upon such an interest is a limitation upon the fee simple and its validity is determined accordingly. Nothing herein contained shall affect the operation of sections 76-111, 76-112 and 76-113 of this act."

The plaintiff argues that the devise of a life estate to

a child of the testator with a remainder to the lineal descendants of the child by right of representation would have created an estate in fee tail at common law and, because of the provisions of section 76-110, R. R. S. 1943, now creates an estate in fee simple in the child of the testator. A similar argument was made in Ellingrod v. Trombla, 168 Neb. 264, 95 N. W. 2d 635. In the Ellingrod case the devise was to a child of the testatrix "and her descendants." This court held that section 76-113, R. R. S. 1943, was controlling and prevented the child of the testatrix from taking an estate in fee simple under section 76-110, R. R. S. 1943.

Section 76-110, R. R. S. 1943, must be read and considered together with sections 76-112 and 76-113, R. R. S. 1943, which are part of the same act and which provide as follows: "Whenever any person, by conveyance, takes a life interest and in the same conveyance an interest is limited by way of remainder, either immediately or mediately, to his heirs, or the heirs of his body, or his issue, or next of kin, or some of such heirs, heirs of the body, issue, or next of kin, the word 'heirs,' 'heirs of the body,' or 'next of kin,' or other words of like import used in the conveyance, in the limitation therein by way of remainder, are not words of limitation carrying to such person an estate of inheritance or absolute estate in the property, but are words of purchase creating a remainder in the designated heirs, heirs of the body, issue, or next of kin. * * * When an otherwise effective conveyance of property is made in favor of a person and his 'children,' or in favor of a person and his 'issue,' or by other words of similar import designating the person and the descendants of the person, whether the conveyance is immediate or postponed, the conveyance creates a life interest in the person designated and a remainder in his designated descendants, unless an intent to create other interests is effectively manifested."

In the Ellingrod case this court held that the child of

the testatrix took a life estate under section 76-113, R. R. S. 1943, and that her descendants took a remainder interest. We reach a similar result in this case. The plaintiff's share of the property and Charlotte's share of the property shall each remain in trust subject to the provisions of the will during their respective lives. Upon their respective deaths each share shall be distributed to their lineal descendants.

The plaintiff argues that the testator's plan of distribution violates the rule against perpetuities because the determination of the persons who will take the remainder interests cannot be made until after the death of the widow, the plaintiff, and Charlotte.

The rule against perpetuities prohibits only the creation of future interests or estates which, by possibility, may not become vested within a life or lives in being and twenty-one years, together with the period of gestation when the inclusion of the latter is necessary to cover cases of posthumous birth. Gillan v. Wilson, 124 Neb. 893, 248 N. W. 646. In this case the testator's widow, the plaintiff, and Charlotte were all lives in being at the time of the death of the testator. Upon the death of the widow, the property was to be divided among the children of the testator. The shares taken by the plaintiff and Charlotte remained in trust and were to be distributed upon the death of the plaintiff and Charlotte. Thus, all classes of remaindermen would be determined within the period required by the rule against perpetuities.

The plaintiff further argues that the will gives the trustee discretion in regard to the method of effecting a division of the property and, for that reason, the shares do not vest upon the death of the widow. The plaintiff suggests that the trustee may take any number of years to sell the property, distribute the proceeds, and terminate the trust. We do not agree with that interpretation of the will.

The will provides that the trustee shall make an

equal division of the property among the children of the testator after the death of the widow. Although there might be some delay in making an actual distribution, the right to share in an equal division of the property accrues immediately upon the death of the widow. This is sufficient to comply with the vesting requirement of the rule against perpetuities.

The election of the widow to take under the statute had the effect in this case of accelerating the provisions of the will as to what was to happen upon her death. The property remaining after the share of the widow has been set aside should now be divided equally among the children of the testator. Eileen Smith is entitled to her share of the real estate subject only to the homestead estate of the widow. The plaintiff's share of the property and Charlotte's share of the property remain in trust subject to the terms of the will. This is the same conclusion that the district court reached. Its judgment as to the construction of the will is, therefore, affirmed.

The district court allowed the guardian ad litem a fee of $750 for his services in that court and taxed all of the costs of the action to the plaintiff. The plaintiff assigns as error the taxing of all costs to him and urges that the costs be taxed to the trust. The plaintiff contends that the construction of the will is for the benefit of all parties interested in the will and that the costs of the action should not be taxed to him.

We believe that the circumstances in this case are such that the costs in both courts should be taxed to the trustee and paid as an expense of the administration of the trust. See, § 25-1711, R. R. S. 1943; Cass v. Pense, 155 Neb. 792, 54 N. W. 2d 68; In re Clapham's Estate, 73 Neb. 492, 103 N. W. 61. The judgment of the district court is modified accordingly. The guardian ad litem is allowed a fee of $750 for his services in this court.

The judgment of the district court as modified is affirmed.

AFFIRMED AS MODIFIED.