329 N.W.2d 842 (1983)
213 Neb. 379
In re Testamentary Trust of Clair C. CRISS, deceased.
UNITED BENEFIT LIFE INSURANCE COMPANY, a corporation, Appellant and Cross-Appellant,
v.
The OMAHA NATIONAL BANK, Trustee, Appellant and Cross-Appellee; Nina Carden et al., Appellees and Cross-Appellants; Creighton University, also known as Creighton Medical School, a corporation, et al., Appellees and Cross-Appellees.
No. 44062.
Supreme Court of Nebraska.
January 28, 1983.
*844 Flavel A. Wright and Donald Evans of Cline, Williams, Wright, Johnson & Oldfather, Lincoln, for appellant United Benefit.
Joseph J. Vinardi and William A. Day, Jr., of Gross, Welch, Vinardi, Kauffman & Day, P.C., Omaha, for appellant Omaha National Bank.
John E. North and David L. Hefflinger of McGrath, North, O'Malley & Kratz, P.C., Omaha, for appellees Volunteers of America.
Barlow, Johnson, DeMars & Flodman, Lincoln, for appellees Nina Carden et al.
William Jay Riley of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, Omaha, for appellee Creighton University.
Hird Stryker and Peter J. Vaughn of Fraser, Stryker, Veach, Vaughn, Meusey, Olson & Boyer, P.C., Omaha, for appellee Hattie B. Munroe Foundation.
Crosby, Guenzel, Davis, Kessner & Kuester, Lincoln, for appellee Leolla Chambers.
*845 Ronald R. Volkmer of McGill, Koley, Parsonage & Lanphier, P.C., Omaha, guardian ad litem for Florence Home and Fontenelle Home.
Thomas R. Burke, Lyman L. Larsen, and Patricia A. Zieg of Kennedy, Holland, DeLacy & Svoboda, Omaha, and Frank J. Barrett, Omaha, for amicus curiae Mutual of Omaha.
KRIVOSHA, C.J., and BOSLAUGH, McCOWN, CLINTON, WHITE and HASTINGS, JJ.
HASTINGS, Justice.
The Omaha National Bank (ONB), as trustee of the testamentary trust of Clair C. Criss, deceased, instituted an action in the county court of Douglas County for an order construing the language of the trust indenture. ONB, United Benefit Life Insurance Company (United), a contingent successor to the remainder interest in the corpus of the trust, and "The issue of Nina Carden," named income beneficiaries under the indenture of trust, appealed from the determination of that court to the District Court for Douglas County. Thereafter, United filed a declaratory judgment action in the District Court based on the same issues as those presented in the county court proceeding. The cases were consolidated for trial in the District Court, which affirmed the decision of the county court and dismissed the declaratory judgment action as being duplicative of the county court proceeding.
We believe that it will be more helpful to an understanding of the nature of this litigation to set forth an outline of the pertinent facts, which are undisputed, before reciting the errors assigned and discussing the applicable law.
Clair C. Criss died on March 9, 1952, leaving surviving him his widow, Mabel L., but no lineal heirs. His will, which was admitted to probate approximately a month later, had been executed by him on January 16, 1942. By the third paragraph of that will he left to his wife all of his real estate, automobiles, household furniture and furnishings, and certain other items of personal property. All of the remainder of his estate, by the terms of the fourth paragraph of his will, he left to his wife, Mabel L. Criss, and ONB, as trustees. His wife was to be paid the net income from the trust, together with such amounts from the principal or corpus of the trust as ONB in its judgment deemed necessary. These payments were to be made to the decedent's wife "quarter annually for life, or until she, by written instrument filed with the Trustees, renounces her right to receive such income." The will went on to provide that "Upon the death of MABEL L. CRISS, the Trustee hereunder shall forthwith deliver all of the Trust Assets to The Omaha National Bank as Trustee under a certain Indenture of Trust between Mabel L. Criss and The Omaha National Bank, dated 15th day of January, 1942, to be administered according to the original and unmodified terms of said Agreement, and upon such delivery this trust shall terminate."
Under article I of that indenture of trust Mabel L. Criss, during her lifetime, was to be paid from income the sum of $200 per month. Article II, section (a), provided that at the death of the donor, Mabel L. Criss, $200 per month from net income was to be paid to each of the following nine individuals or units: Nina G. Engler; Nina Carden; the issue of Nina Carden, as one unit; Mrs. Deane Criss; Minnie Smith and Stella McDonald, as one unit; Sally Mahoney; Margaret Kunce; Leolla Chambers; and Fannie and Leonard Cross, as one unit. Under article II, section (b), $5 per month was to be paid to each of the residents of the Florence Home for the Aged and the Fontenelle Boulevard Home. Under article II, section (c), the remaining income, up to a limit of $10,000 per year, was directed to be paid to Creighton Medical School, the Hattie B. Munroe Home, and the Volunteers of America.
Article III provides that upon the death of all nine of the individual or unit beneficiaries named in article II, section (a), the trust shall either terminate or continue in perpetuity, as the circumstances may dictate. *846 The specific pertinent language is as follows: "Upon the death of all the persons and members of all the units, either named or described by class in Section (a) of Article II, this trust shall forthwith terminate and the principal and all unremitted income... shall be ... conveyed, and assigned to, and shall be the absolute property of the UNITED BENEFIT LIFE INSURANCE COMPANY, Omaha, Nebraska. The foregoing provisions of this Article III are upon condition that there shall have been a continuity of stock ownership of the United Benefit Life Insurance Company from the date of its organization to the date of such delivery of the trust assets to the said Company." Then follows the language that perhaps is the most critical in connection with this appeal: "In the event that more than FIFTY PER CENT of the capital stock of such company shall have been subject to a change of ownership other than that occasioned by death within any five-year period subsequent to the death of the Donor and her husband, Clair C. Criss, then a lack of continuity of stock ownership shall be conclusively presumed. In the absence of such a transfer of Fifty Per Cent (50%) or more of such stock upon the conditions and within the time above stated, a continuity of ownership shall be conclusively presumed." Article III goes on to provide in part that "In the event of a failure of such condition relating to continuity of stock ownership, then upon the death of such last survivor of Section (a) of Article II hereof, this Trust shall continue in perpetuity for the purposes set out in Sections (b) [residents of Florence Home for the Aged and Fontenelle Boulevard Home] and (c) [Creighton Medical School, Hattie B. Munroe Home and the Volunteers of America] of Article II hereof, and all of the income after the payment of the amounts required by Section (b) shall annually be distributed to the institutions named in Section (c) of Article II."
United is a capital stock company with which Clair C. and Mabel L. Criss had had a close, lifetime association. At its inception, 20,000 shares of stock were issued. By November 11, 1952, as a result of amendments to its articles of incorporation, United had increased its stock issue to 100,000 outstanding shares. On November 11, 1952, 62,500 of those outstanding shares were transferred by way of a stockholders' agreement to Mutual of Omaha Insurance Company.
Following the admission of the will of Clair C. Criss to probate on April 12, 1952, Mabel L. Criss, on February 17, 1953, filed an election renouncing her interest under that will. According to the terms of the will, this removed her from the testamentary scheme of the will and the trust created thereunder, and, therefore, she no longer had any income interest in her husband's estate.
On January 10, 1955, ONB was appointed sole trustee for the trust created by the will of Clair C. Criss. As trustee, ONB retained the trust property and accumulated the income therefrom until April 4, 1978. At that time the trust assets were transferred to ONB as trustee under the trust indenture of January 15, 1942, previously mentioned above. This transfer occurred as a result of the death of Mabel L. Criss on March 19, 1978, changing the trust from that created under the will to that created by the indenture of trust dated January 15, 1942. ONB continues to hold these trust assets until it is determined which of the parties here involved is entitled to them.
Another critical decision involves the determination of the membership in the class consisting of "The issue of Nina Carden, considered as a unit," i.e., did the class close as of the date of death of Clair C. Criss on March 9, 1952, on the date that Mabel L. Criss filed her renunciation under the will on February 17, 1953, or on the date of death of Mabel L. Criss on March 19, 1978? Nina Carden, who is presently living, had two daughters: Claire Griffin, born on May 1, 1936, and who died on November 17, 1967, and Nina Evans, born on July 19, 1940, and who is still alive. To Claire were born Amy and David, on November 14, 1960, and August 2, 1962, respectively. Nina Evans has four living children, Timothy, twins Michael and Stephen, and Susan, *847 born on October 18, 1962, October 25, 1964, and September 8, 1970, respectively.
In response to the various pleadings filed in county court, that court made the following findings: (1) The condition of continuity of stock ownership in United must occur or fail, and therefore its interest, or that of Creighton, Munroe Home, and Volunteers, as remaindermen, vest, at the death of the last of the nine individual or unit life income beneficiaries under article II, section (a), of the trust indenture; (2) United was a contingent remainderman of article III of the trust indenture, the contingency being the continuity of stock ownership of 50 percent of United's stock, which continuity was destroyed upon the sale of 62.5 percent of United's stock to Mutual of Omaha in November of 1952; (3) Membership in the class of "The issue of Nina Carden" was determined and closed as of the date of death of Clair C. Criss, and subsequently born issue of Nina Carden are not members of that class, thus avoiding any violation of the rule against perpetuities; (4) The continuity of ownership requirement in the indenture of trust does not create an illegal restraint on the alienability of the stock of United; and (5) The nine individual and unit beneficiaries under article II, section (a), of the trust indenture are entitled to the income and increments thereon from the date of death of Clair C. Criss on March 9, 1952, or, in other words, that there should be acceleration of the successor trust to commence at the death of Clair C. Criss.
Upon hearing in the District Court, that court, as previously stated, without making specific findings, determined that the county court possessed jurisdiction to determine the issues presented to it by way of a request for construction of the will and trust indenture. Accordingly, it affirmed the findings and order of the county court, and dismissed the District Court action for declaratory judgment as being duplicative of the county court proceedings.
In its appeal to this court United generally quarrels with the findings and orders of both the county court and District Court, but sets forth the following specific assignments of error: (1) The District Court, rather than the county court, had jurisdiction to hear the declaratory judgment action and therefore the original District Court action should not have been dismissed; (2) The District Court erred in failing to consider the matter de novo on appeal and determine the issues independently of the findings made by the county court; (3) The court erred in closing the class described as "The issue of Nina Carden" on the date of death of Clair C. Criss, thereby excluding all grandchildren of Nina Carden as members of that class; (4) The court erred in refusing to apply the rule set forth in Askey v. Askey, 111 Neb. 406, 196 N.W. 891 (1923), and in closing the class of "The issue of Nina Carden" prior to the death of Mabel L. Criss; (5) The court erred in finding that the interest of United was a contingent and not a vested remainder under the rule described in Restatement of Property § 277 (1940); (6) The court erred in finding that the condition which must occur before any interest of Creighton, Munroe Home, and Volunteers would come into existence did not violate the rule against perpetuities; (7) The court erred in finding that the trust indenture did not unlawfully restrain alienation of United stock; (8) The court erred in determining that a lack of continuity of stock ownership occurred when 62.5 percent of United's stock was transferred to Mutual of Omaha on November 11, 1952, after the death of Clair C. Criss, but before Mabel L. Criss died.
The trustee, ONB, also appealed, objecting only to the order of the lower courts requiring acceleration of the successor trust as of the date of death of Clair C. Criss. Nina Carden and "The issue of Nina Carden" joined in this appeal, both as appellees and cross-appellants, objecting to the closing of the class as of the date of death of Clair C. Criss, thereby excluding all grandchildren of Nina Carden, and to the failure of the trial courts to determine that each required monthly distribution of income to the article II, section (a), income beneficiaries be in the amount of $1,800 per month, regardless of the number of such beneficiaries living at the time of each distribution, *848 rather than being limited to $200 per month to each of the nine individuals or unit members of the class still extant.
Except as noted, we shall attempt to deal with the assignments of error in the order in which they were presented.

JURISDICTION
We need waste no time with this assignment of error inasmuch as the appellant United concedes in its brief that "in any event, it would appear that in this consolidated action the question of the particular jurisdiction involved need not be decided."

DE NOVO REVIEW
Little more attention need be given the second assignment of error. The written judgment order of the District Court recites that the cause came on for trial "upon the appeal de novo from the County Court of Douglas County ...." It is only necessary that we accept the word of the District Court at face value. Furthermore, this matter must be and will be reviewed de novo in this court. Neb.Rev.Stat. § 25-1925 (Reissue 1979); In re Estate of Layton, 212 Neb. 518, 323 N.W.2d 817 (1982). Therefore, any error in the method of review by the District Court which might have existed will be cured by our review here.

CLOSING OF THE CLASS OF "THE ISSUE OF NINA CARDEN"
Incorporated in the discussion under this heading are assignments of error numbered (3) and (4), i.e., that the court erred in closing the class on the date of death of Clair C. Criss and erred in refusing to apply the rule set forth in Askey v. Askey, supra, by not keeping the class open until the death of Mabel L. Criss.
The effect of closing the class of "The issue of Nina Carden" as of the date of death of Clair C. Criss was to exclude from the benefit of the article II, section (a), income provisions the six great-grandnieces and great-grandnephews of the decedent, born from 8 to 18 years following his death.
The word "issue" is a term of art. The term has been defined as including all lineal descendants. "This court in Godden v. Long, 104 Neb. 13, [175 N.W. 655], opinion written by Chief Justice Morrissey, held as follows: `The term "issue," or "lawful issue," in its primary legal sense, means descendants or lineal descendants generally, and not merely children. * * * It is only when it is used in a special instrument, whose context shows that a narrower construction was intended, that its meaning will be limited.'
"The rule in this state and other state and federal jurisdictions seems to be settled that a devise to `issue' or `issue of the body' will be construed as meaning lineal descendants, rather than children, in the absence of qualifying words showing a contrary intent." Wilkins v. Rowan, 107 Neb. 180, 184, 185 N.W. 437, 439 (1921). However, to permit this class to remain open and allow in all of the lineal descendants of Nina Carden would violate the rule against perpetuities. This is so because it is entirely possible that additional lineal descendants of Nina Carden might be born later than 21 years after the death of all the "lives in being" which existed at the time of the death of Clair C. Criss. The interest of such descendants thus would not vest, by their birth, within the period permitted under the rule, creating a violation thereof.
In order to determine when the class should close we must try to ascertain the intent of the testator and, if legally possible, give effect to that intent. This intent is to be determined by viewing the entire will. Olson v. Sampson, 208 Neb. 18, 302 N.W.2d 32 (1981).
Viewing the will and trust indenture as a whole, there is no express intent evident as to when this class should close. It is clear, however, that in the event a problem arose as to the enforceability of part of this estate plan, the testator nonetheless desired that his plan be effectuated as fully as possible. This intent is evidenced by article XII of the trust indenture: "If any provision of this agreement or the application of *849 such provision to any person or circumstances shall be held invalid, the validity of the remainder of the agreement and the applicability of such provision to other persons or circumstances shall not be affected thereby."
This being the only intent that can be ascertained from the actual wording of the will and trust indenture, the court must resort to general rules of construction to determine what the testator's intent would be if it had been expressed.
There are several Nebraska cases cited by the various parties touching upon some of the questions presented here. Perhaps the one most nearly in point is Tiehen v. Hebenstreit, 152 Neb. 753, 42 N.W.2d 802 (1950). That case involved the interpretation of a will not unlike that with which we are here concerned. In general terms, the will provided a gift of income from a testamentary trust to the two sons and daughter of testatrix. In the event of the death of either son before he had received a full one-third of the estate, the residue of his income interest was to be paid to his children. A principal question that had to be decided was whether or not the provisions of the will relating to the children of the two sons violated the rule against perpetuities. That is to say, it was possible that either of the two sons might beget additional children after the death of the testatrix, and if such afterborn children would come within the terms of the will, the rule as to vesting within a life in being plus 21 years would be violated.
However, in determining when the class of children should close, this court stated: "'A will speaks as of the date of the death of the testator.' Brandeis v. Brandeis, [150 Neb. 222, 34 N.W.2d 160] supra.
....
"This brings us then to the provisions of paragraph Fifth and the remainders given to `the children * * * or the survivor of them' of George and John. The word `children' as used here is a bequest or devise to a class. ` "Since a will speaks from the date of the testator's death, the number of the class will, in the absence of anything in the will showing a contrary intention, be determined upon the death of the testator."' Lacy v. Murdock, 147 Neb. 242, 22 N.W.2d 713.
"As we said in Lacy v. Murdock, supra, we find nothing in the will which in any way defines, explains, interprets, or qualifies the word `children.' Unexplained and given its ordinary meaning, it refers to the children of George and John living at the date of the death of the testatrix." Id. 152 Neb. at 761, 42 N.W.2d at 806. Construing the class of "children" to close as of the date of death of the testatrix, the court concluded that there was no violation of the rule against perpetuities.
In 51 Harv.L.Rev. 254, 291 (1937), Casner, Class Gifts to Others Than to "Heirs" or "Next of Kin" Increase in the Class Membership, we find the following language: "The fact that the rule against perpetuities will be violated if the class is allowed to increase in size until the period of distribution in a particular case undoubtedly may influence some courts to restrict the class to persons born when the instrument takes effect. The theory for such a view is that as between two possible constructions the transferor must have intended the one that will make his disposition valid."
The Restatement of Property § 295 (1940) suggests that a class such as we have here should be held open to afterborn members "unless a contrary intent of the conveyor is found from additional language or circumstances ...." In discussing how such a contrary intent may be found or inferred from a disposition, Comment s to § 295 continues in part in language not dissimilar to that of Professor Casner: "Whenever the increase in the period of postponement thus made would render invalid, under the applicable rule against perpetuities, either the disposition of income to this class, or part or all of the ultimate disposition of corpus, then such invalidity is sufficient to prevent the lengthening of the period during which the class can increase in membership, otherwise made because of *850 the subject matter of the class gift (see § 243, Comment o ). A `contrary intent of the conveyor' is inferred, because postponements merely incident to periodic distributions of income are not an indication of the conveyor's intent to have the class increase meanwhile in membership, sufficiently clear to require the resolution of the ambiguities of the conveyance in a manner invalidating a substantial part of its dispositions." Id. at 1603.
Such a view gains added support in this case when taken in light of the savings clause found in article XII of the trust indenture set out verbatim above. This clause manifests the testator's intent that in case a problem of partial invalidity arose under his will and the trust indenture, his estate plan should nonetheless be effectuated as fully as possible. In order to accomplish this plan as the testator intended, this class must be closed so as to avoid problems with the rule against perpetuities. The intent of the testator to close this class may be inferred from the savings clause set forth above, from the reasoning contained in the Restatement, supra, and from the rules laid down in Tiehen v. Hebenstreit, 152 Neb. 753, 42 N.W.2d 802 (1950). The decision of the lower courts to close the class of "The issue of Nina Carden" as of the date of death of the testator was correct.
United urges, however, that we should apply the rule set forth in Askey v. Askey, 111 Neb. 406, 196 N.W. 891 (1923). In that case the testator left his property for the support of his widow until her remarriage or death, and upon her death, to his grandchildren. The widow elected to take under the laws of descent rather than under the will. The controversy was then between those grandchildren born before the widow's election and those born afterwards. In that case the court concluded, in effect, that it was the intention of the testator that the class consisting of his grandchildren shall not close until the death of his widow. However, a portion of the opinion reads as follows: "It is the general rule that in the absence of a controlling equity, or of an express or implied provision in the will to the contrary, where an estate is given to a person for life with a vested remainder in another, the remainder takes effect in possession whenever the prior gift ceases or fails in whatever manner." (Emphasis supplied.) Id. at 409, 196 N.W. at 892. We would further note that no problem relating to the rule against perpetuities was present in Askey, and, accordingly, no "express or implied provision in the will to the contrary" intervened.

THE COURT ERRED IN FINDING THAT THE INTEREST OF UNITED WAS A CONTINGENT AND NOT A VESTED REMAINDER AND IN FINDING THAT THE CONDITION NECESSARY TO ACTIVATE THE INTERESTS OF CREIGHTON, MUNROE HOME, AND VOLUNTEERS DID NOT VIOLATE THE RULE AGAINST PERPETUITIES.
Combined under this heading are assignments of error numbered (5) and (6).
Having determined the issues concerning the article II, section (a), income beneficiaries in this case, we now turn to the interests of the remaindermen. Although we have previously set forth the terms of article III of the trust indenture relating to the vesting of the remainder interests, it perhaps would be useful to do so again. Article III reads in its entirety: "Upon the death of all the persons and members of all the units, either named or described by class in Section (a) of Article II, this trust shall forthwith terminate and the principal and all unremitted income and reserve shall be forthwith delivered, conveyed, and assigned to, and shall be the absolute property of the UNITED BENEFIT LIFE INSURANCE COMPANY, Omaha, Nebraska. The foregoing provisions of this Article III are upon condition that there shall have been a continuity of stock ownership of the United Benefit Life Insurance Company from the date of its organization to the date of such delivery of the trust assets to the said Company. In the event that more than FIFTY PER CENT of the capital stock of such company *851 shall have been subject to a change of ownership other than that occasioned by death within any five-year period subsequent to the death of the Donor and her husband, Clair C. Criss, then a lack of continuity of stock ownership shall be conclusively presumed. In the absence of such a transfer of Fifty Per Cent (50%) or more of such stock upon the conditions and within the time above stated, a continuity of ownership shall be conclusively presumed.
"In the event of a failure of such condition relating to continuity of stock ownership, then upon the death of such last survivor of Section (a) of Article II hereof, this Trust shall continue in perpetuity for the purposes set out in Sections (b) and (c) of Article II hereof, and all of the income after the payment of the amounts required by Section (b) shall annually be distributed to the institutions named in Section (c) of Article II. In the event, one or more of the institutions and the alternate, if any named therefor, in said Section (c) shall, in the opinion of the Trustee, cease to exist or to perform the work now done by them, the remaining institutions named in said Section (c) shall receive all of the income that otherwise would have been distributable among the three institutions. In the event all of the said named institutions in Section (c) shall, in the opinion of the Trustee, cease to exist or to perform the work now done by them, the Trustee shall annually distribute said income to such charitable, educational, health or welfare institutions as it, in its exclusive discretion, may select and deem most deserving."
Clearly, this provision creates a condition (continuity of stock ownership) which is to determine who will receive the remainder in this case. Before deciding whether or not this condition has been met, we first need to discuss the interests of the parties.
United contends that this bequest creates in it a vested remainder subject to complete defeasance. United further argues that because its interest is vested, the remainder interests of the charities are barred as an executory interest that might not rest within the lives in being existing at the date of Clair C. Criss' death plus 21 years.
As we stated earlier, the class of "The issue of Nina Carden" closed as to members born after the death of the decedent. This makes all the income beneficiaries of article II, section (a), "lives in being" at the time of the death of the testator for purposes of this estate plan. At the death of the last of these article II, section (a), income beneficiaries, one group of the potential remaindermen will take the residue of this trust. This being so, the question of whether United's interest is vested or not, or whether the charities are executory or contingent, becomes irrelevant. The interest of United or of the charities must vest by possession at the death of the last income beneficiary, a "life in being." Since the intent of one of these parties must vest by possession within this period, there is no violation of the rule against perpetuities. The only real question remaining is which of these two interests is to receive this remainder in light of the continuity of ownership condition.

CONTINUITY OF STOCK OWNERSHIP
This comprises the eighth and last specific assignment of error of United. However, we will consider it ahead of the seventh assignment because, logically, it should be discussed before the question of whether such requirement in the trust indenture constitutes an unlawful restraint on alienation of stock.
There has been a great deal of argument and briefing devoted to the meaning of the clause regarding the 50 percent transfer of stock in the trust indenture. "In the event that more than FIFTY PER CENT of the capital stock of such company shall have been subject to a change of ownership other than that occasioned by death within any five-year period subsequent to the death of the Donor and her husband, Clair C. Criss, then a lack of continuity of stock ownership shall be conclusively presumed." This clause is ambiguous on its face as to when a transfer of 50 percent of this capital stock will mean the condition has failed or not. Being ambiguous on its face, the clause suffers from a patent ambiguity. *852 When faced with such a problem, we have stated: "`A patent ambiguity must be removed by interpretation according to legal principles and the intention of the testator must be found in the will. In searching for the intention of the testator the court must examine the entire will, consider each of its provisions, give words their generally accepted literal and grammatical meaning, and indulge the presumption that the testator understood the meaning of the words used. * * * The intention within the ambit of this rule is the one the testator expressed by the language of the will and not an entertained but unexpressed intention.'" Gretchen Swanson Family Foundation, Inc. v. Johnson, 193 Neb. 641, 643-44, 228 N.W.2d 608, 610 (1975).
We have also stated with regard to the construction of ambiguous terms: "A clause or provision of a will must, if possible, be so construed as to give effect to the intention of the testator. If doubtful or ambiguous words, in their ordinary literal sense, appear to be inconsistent with plain and unambiguous language in the same clause or sentence, such words will be so construed, if reasonably possible, as to render the whole clause or sentence intelligible and consistent." (Syllabus of the court.) In re Estate of Creighton, 91 Neb. 654, 136 N.W. 1001 (1912).
"When there are definite and unambiguous expressions in a will, other expressions that are capable of more than one construction must be so construed, if reasonably practicable, as to harmonize with the plain provisions of the will." Marsh v. Marsh, 92 Neb. 189, 195, 137 N.W. 1122, 1124 (1912).
In light of the above-cited authority, it seems we must determine the intent of the testator as contained within the four corners of this will and construe its provisions so as to harmonize them with this intent and with each other. In determining the intent of the testator with regard to the continuity of ownership clause, certain ideas seem clear. This transfer of the trust assets is certainly to occur on the death of the last article II, section (a), income beneficiary. At that time, this trust property will become the property of United, or it will be placed in perpetual trust for certain charitable institutions. What determines who shall receive this remainder is whether there shall have been a continuity of ownership of 50 percent of the stock of United from the time of its creation until such time when this remainder is delivered to the remainderman or perpetual trust. Stock transfers occasioned by death are excepted from this condition for purposes of changes in ownership. These ideas are unambiguously stated in this will. The question remains: Stock transfers as a result of whose death occurring at what time are not to be considered?
This clause simply states "subject to a change of ownership other than that occasioned by death." The plain meaning of this phrase indicates all transfers which come about as a result of someone's death are not to be considered for the purposes of this condition. This idea is then limited by the language "within any five-year period subsequent to the death of the Donor and her husband, Clair C. Criss." The word "any," as used here, would indicate that more than one 5-year period is contemplated. By contemplating more than one 5year period, the testator must have intended this to mean that transfers made during a 5-year period after the death of Mabel L. and transfers made during a 5-year period after the death of Clair C., which came about as a result of the death of someone, are not to be considered when determining whether the continuity of ownership condition has occurred or not. To construe this ambiguous phrase in this way, on the one hand, gives a meaning to the terms used therein, while at the same time making it consistent with the other manifestations of the testator's intent. This interpretation is consistent with the idea that some stock transfers are excepted and that there be continuity in ownership of 50 percent of this stock. To construe this language in this fashion keeps the phrase from violating any of the other manifestations of the testator's intent, and it is therefore adopted by this court.
*853 Was there a transfer of 50 percent or more of the stock in question which has not occurred due to someone's death during a 5-year period following the death of Clair C. and Mabel L. Criss? The record indicates that 62.5 percent of the stock issued by United was transferred by way of a stockholders' agreement on November 11, 1952. While this transfer did occur within a 5year period following the death of Clair C. Criss, it was not occasioned by someone's death. This transfer came about by reason of an agreement of United's stockholders. This transfer does not fit within the exception stated above. Therefore, the continuity of stock ownership has failed. The trust assets at the death of the last article II, section (a), income beneficiary are to continue in perpetual trust for the benefit of the article II, sections (b) and (c), charities, to be administered according to article III, paragraph 2, of the indenture of trust incorporated into the will of Clair C. Criss, unless such condition created an unlawful restraint on the alienation of United's stock.

RESTRAINT ON ALIENATION
There is no evidence of any illegal restraint on the alienability of this stock due to this clause. At best, the possibility that United would in fact become the remainderman in this case would only create some economic incentive encouraging stockholders to retain their stock. The general rule with regard to improper restraints on alienation is: "One of the primary incidents of ownership of property in fee simple is the right to convey or encumber it. It is the general rule that a testator may not create a fee simple estate to vest at his death and at the same time restrict its alienation. This is because conditions which restrict alienation are repugnant to the very estate the testator has created." Cast v. National Bank of Commerce T. & S. Assn., 186 Neb. 385, 389, 183 N.W.2d 485, 489 (1971).
The continuity of stock ownership clause in no way prevents the stockholders of United from transferring their stock. This doctrine has no application in this case.

ACCELERATION OF INCOME INTERESTS
This is the sole assignment of error raised by the trustee, ONB. It presents the question as to what was the effect of the renunciation by Mabel L. Criss of her interest under the will. Does this renunciation cause the succeeding life income interests to be accelerated? ONB contends that acceleration is inappropriate in this case.
It seems to be agreed that the general rule regarding renunciation in cases such as this calls for an acceleration of any succeeding interests, as stated in the Restatement of Property § 231 (1936): "When an attempted prior interest fails because the person to whom it is limited renounces it, succeeding interests are accelerated except when (a) the terms and circumstances of the limitation manifest a contrary intent (see §§ 232 and 233); or (b) the person renouncing such attempted prior interest effectively claims an interest in derogation of the dispositions sought to be made and thereby causes (i) the application of the attempted prior interest to the satisfaction of the renouncer's new claim; or (ii) the failure of the entire disposition; or (iii) the sequestration of the attempted prior interest in accordance with the rule stated in § 234(a)." Comment d at 964 to that section reads as follows: "Normally renunciation is not manifested until a date subsequent to the time when the creating instrument becomes operative. When, however, such renunciation is manifested, the resulting ineffectiveness operates, for all purposes material in this Chapter, as an ineffectiveness in the inception. This is often described as a case in which the renunciation `relates back' to the time when the creating instrument became operative."
The trustee points to exceptions to this rule, arguing that acceleration is inappropriate here. These exceptions are embodied in the Restatement of Property §§ 232 and 233 (1936). Section 232 simply states that succeeding interests should not be accelerated if there is an affirmatively manifested intent that acceleration should not occur in the case of a renunciation. In *854 the present case no such affirmatively expressed intent can be gleaned from this instrument. It has been held by this court that a testator is presumed to know that his widow might elect to take her share of his estate as provided for by statute and renounce any interest under his will. In re Estate of Stieber, 139 Neb. 36,296 N.W. 336 (1941). When a widow elects to take her "forced" or statutory share and renounce her interest under her husband's will, she may well be treated as having predeceased her husband, thereby taking no interest under the will. "When the widow elected to take against the will, the provisions as to her life interest must necessarily be treated as if she had terminated her life estate by death." McCollum v. McCollum, 108 Neb. 82, 84, 187 N.W. 783 (1922). Although the holding in Askey v. Askey, 111 Neb. 406, 196 N.W. 891 (1923), might seem to contradict such language, such is not the case. Relying upon the further holding in McCollum, supra, that the renunciation of the will by the widow will not be allowed to break the testamentary plan further than is absolutely necessary, the Askey court simply concluded that, in its opinion, it was not the intention of the testator that "the time of distribution should be accelerated by the happening of some event other than her death, which might terminate her life estate." Id. at 410, 196 N.W. at 893.
In light of the foregoing propositions of law, we may assume that Clair C. Criss knew that his wife might renounce under the will. If in such event he intended Mabel L. to be treated as other than predeceasing him, or that these income interests should not be accelerated, the testator would have so stated. To the contrary, the only intention that can be found in this will is that payment of these income interests is to begin at Mabel L.'s death. Having concluded that her renunciation was tantamount to her death, and finding no intention in the will against acceleration, these income beneficiaries should have begun receiving payments as of the date of death of Clair C. Criss.
The Restatement § 233, supra, states that when a prior interest fails because it is renounced, any succeeding interest subject to an unfulfilled condition precedent shall not accelerate until such condition is fulfilled. In this case the only condition precedent to the interests of the income beneficiaries is the death of Mabel L. Criss. Having indulged the presumption the renunciation is tantamount to death, the only condition precedent to the interests of the income beneficiaries is satisfied. Therefore, this section does not preclude acceleration in this case.
Such a result is not only consistent under the general propositions of law set out in the Restatement but also with several prior holdings of this court. See Hauschild v. Hauschild, 176 Neb. 319, 126 N.W.2d 192 (1964); In re Estate of Stieber, supra. The interests of the life income beneficiaries and charities set forth in article II, sections (a), (b), and (c), of the trust indenture are therefore accelerated to take effect at the death of Clair C. Criss on March 9, 1952, as set out in the orders of the county court and the District Court.

"CUMULATION" OF ARTICLE II, SECTION (a), BENEFICIARIES' INTERESTS
For want of a better term, we have applied this heading to the remaining claimed error raised in the cross-appeal of "The issue of Nina Carden." Although we have determined that this class does not consist of any of the grandchildren of Nina Carden, the concept argued would apply to all article II, section (a), beneficiaries.
It is contended that not only are those beneficiaries entitled to a $200-per-month payment from the time of the death of Clair C. Criss but also, under certain circumstances, to additional income as well. Under the theory proffered, the total bequest of income to article II, section (a), beneficiaries, $1,800 per month, is to be divided among those beneficiaries $200 per month to each of the nine individuals or units. When one unit or individual would cease to exist, the remaining existing units *855 or individuals would divide that no longer existing unit's or individual's share. For example, if only five of the nine original beneficiaries set out in article II, section (a), remained today, they would split the $1,800 between them equally each month, thus receiving $360 each per month.
This argument has no support under the plain terms of the trust indenture. The language which determines the payment of income to article II, section (a), beneficiaries reads as follows: "The fractional interest distributable to each of the above named individuals or units shall be determined on the date of each distribution by the number of the above named individuals or units, or survivors of units who are living on such date. If one member of a unit above described shall be deceased, the surviving member or members of such unit shall take the share of the deceased member. The payments hereunder shall, however, be limited to the rate of TWO HUNDRED DOLLARS ($200) per month to each individual or unit. Such monthly payments shall not be cumulative until the payments are commenced under Section (b) hereof." (Emphasis supplied.)
When determining the meaning of language used in a will the court must examine the entire will, consider each of its provisions, and give the words used their generally accepted literal and grammatical meaning. Olson v. Sampson, 208 Neb. 18, 302 N.W.2d 32 (1981). The clear and literal meaning of the above-quoted language places an absolute limit of $200 per month on the income which is to be given to each of the article II, section (a), beneficiaries.
From a de novo review of the record as indicated by the foregoing findings, we determine that the judgment of the District Court, affirming the order of the county court, was correct, and it is affirmed.
AFFIRMED.
CLINTON and CAPORALE, JJ., not participating.